Nov. Term,
1861.              THE CITY OF INDIANAPOLIS *v.* SKEEN and Others.

THE CITY OF
INDIANAPOLIS  On *August* 18, 1856, the common council of the *City of Indianapolis,* adopted
   v.            a resolution by which *S.* was appointed the agent of said city to negotiate
SKEEN.         certain city bonds, at a rate not less than ninety-seven cents on the dollar,
               and the mayor of the city was directed to take proper security from *S.* for
               the discharge of the trust.   *S.* accepted the trust, and on the same day
               executed his bond with securities, conditioned that he should well and truly
               execute said trust, and pay over to the city all moneys that might come
               to his hands, as such agent.   The bonds of the city to the amount of
               $25,000, were then placed in the hands of the agent.   Afterward, on *Sep-*
               *tember* 2, of the same year, the former resolution of the council was so
               far modified as to authorize the agent to negotiate said bonds at a rate not
               greater than an interest of ten per cent., and again on *October* 6 the coun-
               cil modified their former instructions by authorizing the agent to make a
               loan of $20,000 for two years, by hypothecation of $25,000 of bonds.
               Suit by the city on the bond, alleging that on *September* 27, 1856, *S.,* in
               violation of his said trust, borrowed the sum of $5,000 at thirty days, at
               seven per cent. interest, and to secure the same, hypothecated $21,000
               of said bonds ; that said agent wholly failed and refused to pay over said
               $5,000 to the city, and in consequence thereof, and to prevent loss, the
               city was forced to pay, and did pay, said $5,000, with a large amount of
               interest and expenses, &c.

*Held,* that *S.* having, by his misconduct, obtained the money by a pledge
    of the bonds of the city, was responsible to his principal for the loss sus-
    tained on account of such misconduct, and whether the bonds were prop-
    erly or improperly pledged in the first instance can not be inquired
    into by the agent, as his act was so far adopted by his principal as to
    redeem the bonds pledged by him.

*Held,* also, that the question as to whether the city council transcended its
    powers in issuing the bonds can not be inquired into in this action either
    by the agent or his sureties.

*Held,* also, that those dealing with the agent, were not compelled to look to
    the records of the council either for the appointment or instructions of the
    agent, since they were not necessarily of record.

*Held,* also, that the city having adopted the act of the agent, by paying the
    note given by him, the mouths of the agent and his sureties were closed
    from denying the power of the agent to do the act and receive the pro-
    ceeds of it, when called upon by his principal for such proceeds, by a
    suit upon the bond.

*Held,* also, that there was nothing in the bond sued on, requiring the per-
    formance of an illegal act, as the resolution appointing the agent did not
    necessarily require a sale of the bonds at a usurious rate of interest.

*Held,* also, that as the second resolution passed by the council after the

original resolution of appointment was not acted upon by the agent, and as the third resolution was passed after he had borrowed the money sued for, they could not affect the liability of the sureties by any supposed change in the duties of their principal.

APPEAL from the *Marion* Circuit Court.

HANNA, J.—It is averred in the complaint that, "on *August* 18, 1856, the common council adopted a resolution as follows: "Resolved, that *Jeremiah Skeen* be, and he is hereby appointed, agent of the *City of Indianapolis* to negotiate a portion of the city bonds authorized to be issued by the city, at a rate not less than ninety-seven cents to the dollar, and that his expenses be paid by the city, the mayor of the city taking the proper security for the proper discharge of the trust." And further, that *Skeen* accepted the appointment, and executed the bond sued on, together with the other defendants as his securities, conditioned "that the said *Skeen* was this day appointed agent of said city, &c., to negotiate the bonds of the city, aforesaid. Now if said *Skeen* shall well and truly execute said trust, and pay all moneys that may come to his hands, as such agent, to the city," &c. And that bonds were delivered to said *Skeen*, numbering from one to twenty-five, for one thousand dollars each, and being each of the same tenor, payable to *Nathan B. Palmer*, or bearer, and bearing interest at six per cent. from date, payable semi-annually, on the first of *January* and *July*, on presentation of the coupons attached, until payment of the principal sum, which was on a credit of two years, &c. The bond sued on was dated on the same day the above quoted resolution was adopted.

It is further averred that on *September* 2, said resolution was by the council so far modified by another resolution, as to empower said *Skeen* to negotiate said bonds at a rate not greater than an interest of ten per centum per annum; and that afterward, on *October* 6, 1856, the council adopted a resolution directing said *Skeen* to complete his arrangement for a loan for $20,000, principal and interest to be paid at the periods named in said bonds, &c., on hypothecation of $25,000 of said bonds. That so much of a former resolution as relates to the times upon which said loan was to be effected, be and is repealed.

Nov. Term,
1861.

The City of
Indianapolis
v.
Skeen.

It is further averred that said *Skeen*, in violation of his said trust, and the directions of said city, &c., did on *September* 27, 1856, borrow of, &c., the sum of $5,000, for which he executed a note, payable at thirty days after date, with seven per cent. interest, dated and payable at *New York*, and that by the laws of said State, said rate of interest was legal; and signed said note, "City of *Indianapolis*, *Indiana*, by *J. D. Skeen*, Agent;" and to secure the payment thereof, hypothecated with the payees of said note said bonds of said city to the amount of $21,000, which, by the terms of said note, upon the non-payment thereof at maturity, the said, &c., were authorized to sell without notice; that *Skeen*, &c., failed, &c., to pay over said $5,000; that to obtain a release of said bonds, plaintiff paid to, &c., said $5,000, as well as $500, interest, and the further sum of $500, expenses, &c.

There is a second paragraph, similar to the first in its averments as to the appointment, &c., of *Skeen*, and as to the resolutions adopted, &c. It then avers that said *Skeen* did not well and truly discharge his said trust, but in violation of said instructions, &c., borrowed of certain bankers, &c., the sum of $5,000, and for the purpose of procuring said loan, falsely and fraudulently represented to, &c., that said city had a debt maturing, &c., and that unless he procured said sum, plaintiff's credit would be lost; whereas, in truth, said plaintiff had no such debt, &c. That he executed said note as agent, but, in fact, without authority, and for his own benefit, &c. Averment of pledge of bonds, &c., and that *Skeen* fraudulently converted said money to his own use, and falsely represented that the said bonds were deposited for safe keeping, &c. That he has wholly failed to pay, &c.; and that the city has paid, &c., to release said bonds, &c.

The defendants severally demurred to the complaint, and to each paragraph, because, as averred by *Skeen*, the same did not state facts sufficient, and because it was shown by said complaint and bond that the same was executed and delivered to secure the performance, &c., on the part of said *Skeen*, of an act and business wholly illegal and void, &c.; that if the city paid any money on account, &c., the same

was paid of its own wrong, and not on account of any act of defendant. The securities assigned the same causes of demurrer; and, also, that the bond sued on was given, inasmuch as said *Skeen* had that day been appointed, &c., to negotiate said bonds, being made under the resolution of *August* 18, in which the duties of said agent were fixed. That a subsequent resolution imposed new and different duties on said *Skeen*, and withdrew the power conferred by the former, and gave said *Skeen* power, simply, to hypothecate bonds; that they are liable, if at all, only for any default under the former resolution; whereas said suit is for a failure, &c., under the latter resolution, &c.

The demurrers were sustained, and the plaintiff failing to amend, there was judgment for the defendants.

Questions are raised here: 1. On the power of the city to issue, &c., bonds. 2. On the legality of a contract at the rates mentioned, &c. 3. On the right of an agent to avail himself of the illegality, if any, of the contract. 4. In reference to the effect of the action of the council, subsequent to the execution of the bond sued on, as bearing upon the liability of the securities.

The statute we are pointed to, as authorizing said proceeding, is 1 R. S., § 80, p. 220, and reads as follows: "Loans may be made by a vote of two thirds of the common council, in anticipation of the revenue of the current and following year, and payable within that period; but the aggregate amount of such loan in any one fiscal year shall not exceed the levy and tax authorized by this act, for the municipal expenses for the same year."

It appears from the pleading that the action of the council, authorizing a loan, and the issue of bonds, had occurred previous to the first resolution quoted, perhaps in *July*, but the order made, or proceeding had, upon that occasion is not in the record. So we are not informed whether there was a vote of two thirds of the council; whether the loan was in anticipation of the revenue of that and the following year; nor whether the amount was within the aggregate of the levy, &c., for that year. Was it necessary to comply with these provisions of the statute, and if so, should we

Nov. Term, 1861.

THE CITY OF INDIANAPOLIS v. SKEEN.

presume in favor of the alleged action of the council in respect to them, are questions we are asked to determine.

It is not necessary, in this action, for us to examine the rights acquired by the holders of the bonds, nor the power and liabilities of the city council, in issuing, &c.; it sufficiently appears from the pleadings that *Skeen* was appointed agent of the city to borrow money for its use; and that he obtained $5,000, and failed to pay it over. If he exceeded his authority and thus obtained the money, or even by misconduct, he is responsible to his principal; providing that principal suffer loss by his act. It is shown the loss was suffered, in this, that money had to be paid ·in discharge of · the note given, and to recover possession of certain bonds pledged. Whether the bonds were properly or improperly pledged, in the first instance, can not, in this action, be inquired into by the agent, because the act was so far adopted by the principal as to advance the money to redeem, as stipulated by him. Nor is it a subject of inquiry, in this action, by either the agent or his securities, whether the council transcended its powers in issuing said bonds. They were issued and placed in his hands, under such instructions as they saw proper to give. Those dealing with him were not compelled to look to the records of said council for either his appointment or instructions, because they were not necessarily of record there. Bonds were passed out of his hands, under these circumstances, and a note executed, whether properly issued or not, and whether so passed, under and within said instructions or not, can not be a material inquiry, when it is averred that· to save the credit of the city, and keep themselves harmless, from the acts of said agent, his principal was compelled to and did pay large sums. Story on Agency, § 217; *The People* v. *Norton*, 5 Seld. 179; *Supervisor of Rensselaer Co.* v. *Bates*, 3 Smith, (N. Y.) 242.

The appellees next insist that the appellant was not obliged to pay to, &c., the sum stipulated by *Skeen*, in the note, &c., and that said appellant could not by electing to pay, in the absence of a legal obligation, create a liability on the part of appellees to said appellant.

This is placing the payment made by the city in the light

of a voluntary payment. If we are correct in the conclu-
sions arrived at above, we do not see how the appellees
could avail themselves of the question here attempted to be
raised. The agent had used the securities placed in his
hands to raise money upon, perhaps, not strictly in the mode,
nor to the amount, anticipated by the principal; but still the
principal adopted the act by making the payment, according
to the stipulations of the agent; and it appears to us that
the mouths of the agent and his securities are closed from
denying the power of the agent to do the act and receive
the proceeds of it, when called upon by his principal for such
proceeds, by a suit upon the bond given for the performance
of his duties. But it is said the bond itself can not be the
foundation of an action, because it is void, in consequence
of having been made to secure the performance of an illegal
transaction, namely, a usurious contract.

Whether, in the further progress of the proceedings, facts
can be shown that would establish the propositions advanced
we need intimate no opinion; but certainly such fact is not
shown by the bond itself; that was to secure the performance
of the duties of an agent in negotiating certain securities of
the principal. His business was to discharge the duties of
an agent, and pay over the proceeds of his negotiations. The
bonds placed in his hands bore interest at the rate of six per
cent. By the resolution of his appointment, he was limited
in his negotiations to a rate not less than ninety-seven cents
to the dollar. He might have negotiated at par. It was not
a fixed fact that they were to pass out of his hands upon usu-
rious terms. But even if the instructions were to that effect,
it is questionable whether they would render the bond sued
on invalid. There was no designated place where the duties
of the agent were to be discharged. In this State a suit upon
a note, bearing a usurious rate of interest, can be maintained
so far as to recover the principal. The contract that might
be made at such a rate would not, therefore, be in-all respects
invalid. But without giving an opinion upon the point, it is
only necessary to say that there was nothing in the bond sued
on requiring the performance of an illegal act; and, keeping
in view the place where the loan was made, and the rate of

Nov. Term.
1861.

interest averred to be legal there, and that agreed to be paid, we do not see that there was any usury in the contract.

These observations appear to us as sufficient upon the three first propositions; as to the fourth, the pleadings do not show that any instructions given by the city, after the appointment of *Sheen*, were acted upon by him. By the second resolution he was authorized to negotiate at ten per cent.; he did not do it, but at seven. The third resolution, it is urged, so far changed his duties as to release his securities. It should not have any effect, because it was not adopted until after the agent had acted; and can not, therefore, be presumed to have influenced that action.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*B. K. Elliott*, for the appellant.

