Wilson *et al. v.* The Town of Monticello.

No. 8955.

WILSON ET AL. *v.* THE TOWN OF MONTICELLO.

PRINCIPAL AND SURETY.—*Bond.—Agent.—Town.—Conversion.—Release of Surety.—Pleading.—Consideration.—Estoppel.—Fraud.—Demand.—Accounting.—Practice.*—An incorporated town, having bonds outstanding, issued to raise funds to erect a school-house, executed new bonds at a lower rate of interest, with a view to refund its debt, and appointed an agent to sell them. Afterwards the agent returned a part of these, and then, in consideration that he might retain those not returned, and that those returned would be again entrusted to him to negotiate and with the proceeds take up the old bonds, he gave bond with sureties, conditioned to perform said duties, and to account after a fixed date, it being recited in the bond that the securities were " this day delivered " to him. He became a defaulter and fled to parts unknown.

*Held,* that a complaint by the town on the bond, alleging the above facts, was good on demurrer.

*Held,* also, that the bond was executed on a concurrent and not a past consideration.

*Held,* also, that neither the agent nor his sureties could question the validity of either the old or new bonds, or the right of the town to the proceeds of the latter.

*Held,* also, that, the agent having absconded to parts unknown, a demand upon him was excused.

*Held,* also, that an answer by the sureties, that before the commencement of the suit it was known to the plaintiff that the agent had converted the bonds to his own use, and that it did not inform the sureties, was bad on demurrer.

*Held,* also, that an answer, denying that any demand for an accounting had been made on the agent, was bad on demurrer.

*Held,* also, that an answer by the sureties, denying the delivery of the bond sued on, is embraced in the general denial, and where the latter is pleaded there is no available error in sustaining a demurrer to the former.

*Held,* also, that an answer by the sureties, that the plaintiff knew and concealed from them the fact that the agent had, before the bond was executed, disposed of the securities not returned, and also represented to them that he then had them in his hands, whereby they were deceived and induced to become sureties, was not embraced in the general denial, nor in an answer alleging want of consideration, and was a good defence.

*Held,* also, that by the terms of the bond the sureties were liable only for the securities delivered to the agent on and after its date.

PRACTICE.—*Supreme Court.*—Where a good defence has been erroneously stricken out, the Supreme Court will reverse the cause, and will not examine the evidence.

From the Jasper Circuit Court.

*J. Applegate,* —— *Palmer, A. W. Reynolds* and *E. B. Sellers,* for appellants.

*H. P. Owens, W. E. Uhl* and *D. P. Baldwin,* for appellee.

ELLIOTT, J.—The first paragraph of the appellee's complaint alleges, that in the month of May, 1878, it had outstanding, in the hands of *bona fide* holders, bonds to the amount of $21,000, which had been executed for the purpose of raising money to erect a school-house; that, for the purpose of substituting for these bonds others bearing a lower rate of interest, the appellee appointed Joseph C. Wilson an agent to negotiate and sell bonds issued by its board of trustees, and placed in his hands bonds to the amount of $21,000; that afterwards, in September of the same year, the board of trustees directed Wilson to return the bonds in his hands, and that he did return part of them; that on the 3d day of February, 1879, in consideration that appellee would again place in his, Wilson's, hands, the bonds returned by him and permit him to negotiate them and pay the outstanding bonds, the appellants executed their bond, in which is written the following: "The conditions of the above obligation are such, that, whereas the trustees of the said town have this day delivered

to the above bound Joseph C. Wilson the bonds of said town, amounting to $21,000, to be by him sold or exchanged for old bonds heretofore issued by the board of trustees of said town: Now, if the said Joseph C. Wilson shall account to, and pay over to the board of trustees all money derived from the first above mentioned bonds, deliver to the said board or said treasurer all old bonds taken by him in exchange for said first mentioned bonds and return to said board all bonds undisposed of when called upon by said board of trustees after July 9th, 1879, then this bond shall be void, else to remain in full force and effect in law." It is further alleged that the appellee did, on the 3d day of February, 1879, accept the obligation executed by appellants, and did deliver to Wilson one hundred and thirty bonds of the denomination of $100 each, and did consent that he might retain the eighty bonds theretofore delivered to him; that prior to the 3d of February, 1879, Wilson had sold sixty of the eighty bonds not delivered under the order of the trustees; that he then had in his possession $6,000, which he had received for the bonds sold by him. The facts constituting the breach of the bond are properly stated.

The complaint shows that the bond was executed upon a concurrent and not upon a past consideration, and that such a consideration will support a contract is one of the plainest rules of elementary law. The agreement that Wilson might retain what he had already received was not, as counsel suppose, a past consideration. A creditor who agrees to allow his debtor to retain property or money already in his hands, supplies a consideration for a contract, and this is so although no specific time is agreed upon. *Wills* v. *Ross,* 77 Ind. 1 (40 Am. R. 279); *Hakes* v. *Hotchkiss,* 23 Vt. 231; *Oldershaw* v. *King,* 2 H. & N. 517. But there was a delivery of bonds at the time the bond was executed, and this makes the complaint good for part, at least, of the relief demanded, and this enables it to repel the demurrer. *Bayless* v. *Glenn,* 72 Ind. 5.

It is contended that the town of Monticello had no author-

ity to issue the bonds placed in Wilson's hands, and that, therefore, his sureties are not liable on the obligation sued on. We think the sureties are not in a situation to question the authority of the town to issue the bonds placed in Wilson's hands as its agent under his agreement to use them in payment of its outstanding indebtedness. It is a familiar doctrine that an agent who receives money on account of his principal can not escape an accounting upon the ground that his principal had no right to engage in the transaction which yielded the money. There are many cases extending this rule to sureties, upon the ground that when the principal is bound so also is the surety. In *City of Indianapolis* v. *Skeen,* 17 Ind. 628, the facts were that Skeen was appointed the agent of the city to negotiate its bonds; he pledged them and refused to account for the proceeds, and the court held that neither he nor the sureties upon the bond which he had executed for the faithful performance of his trust could be heard to say that the municipality had transcended its power in issuing the bonds placed in his hands. In the case of *Supervisor, etc.,* v. *Bates,* 17 N. Y. 242, a like principle was declared and enforced. The court there said: " But, however illegal the proceedings of the board of supervisors may have been, Sherry was not at liberty to deny their validity. He accepted the appointment of treasurer, and undertook, as the agent of the board, to execute the power conferred upon him. The defendant also, as the surety of Sherry, agreed with the board of supervisors that he should faithfully account for such moneys as should come into his hands as such agent. Though called treasurer, he was in fact the agent of the board of supervisors; and both he and his sureties are precluded from questioning the power of the board, as principals, to confer upon him the authority under which he acted." *People* v. *Norton,* 5 Seld. 176, and *State* v. *City of Buffalo,* 2 Hill, 434, are cited by the court, and fully sustain its decision. In other States the general doctrine has received unqualified approval. *Boehmer* v. *County of Schuylkill,* 46 Pa. St. 452; *Wylie* v. *Gallagher,* 46

Pa. St. 205; *McLean* v. *State*, 8 Heiskell, 22, *vide* opinion, p. 255; *Miller* v. *Moore*, 3 Humphrey, 189; *McGuire* v. *Bry*, 3 Rob. La. 196; *Mississippi Co.* v. *Jackson*, 51 Mo. 23. The case before us does not require us to go as far as the doctrine of the cases cited, for here the agent was authorized to dispose of bonds to pay a debt already contracted, and he certainly has no right to contest the validity of the original debt. *Little Rock* v. *Merchants' National Bank*, 98 U. S. 308. It is a familiar principle, recognized in *City of Indianapolis* v. *Skeen, supra,* as well as in many of our cases, that a city or town may issue bonds, notes or other evidences of indebtedness, to pay an existing debt. It would be strange, indeed, if an agent and his sureties could be permitted to receive negotiable securities issued to pay bonds due *bona fide* holders, under an agreement to use them for that purpose, and, after having received the money for them, defeat the principal upon the ground that the original debt was contracted without authority.

It is the general rule, that an agent can not be sued for money collected by him until a demand has been made upon him by the principal; but an excuse for the failure to make a demand is, if a sufficient one, equivalent to a demand. The complaint before us shows such an excuse, for it shows that the agent had fled the country, and that the appellee had no knowledge of his tarrying place.

It is argued that the money derived from the sale of the bonds is not that of the town but of the school corporation. Nothing can be plainer than that the agent and his sureties are not in a situation to deny the appellee's right to this money. They contracted with the town that the agent should receive and dispose of the bonds as the property of the town, should account to it for all money received, and they can not be heard to aver that the money is not that of the town. It was so received, and must be so accounted for.

The sixth paragraph of the separate answer of the sureties alleges, that Wilson had converted bonds to his own use prior to the commencement of the action, and that although this

fact was known to appellee, it was not communicated to them. The bond and contract expressly provided.that Wilson should retain the bonds and proceeds until July 1st, 1879, and until that time the appellee had no right to interfere with his disposition of them. The bond bound Wilson to account when called upon after that date, and until then there could have been no default on his part, no matter how he may have used the proceeds of the bonds placed in his hands for negotiation. The case is unlike that of one who entrusts an agent with money after he has detected him in the commission of a dishonest act, for here the agent had received all that the principal was to entrust him with before any wrong was committed. It is unlike the case of a dishonest servant, whom the master may discharge at any time for misconduct, for the right of the agent to retain the bonds, or their proceeds, was for a fixed time, and until the expiration of that time he could neither be discharged nor required to account.

Where an agent is employed to negotiate bonds placed in his hands, before or at the time of making the contract, and, under the terms of the .contract, is entitled to hold them, or their proceeds, until a designated time, his sureties can not escape liability upon the ground, that before the expiration of the time fixed for the accounting, he had used the bonds or their proceeds. This is so even though the principal may have had notice that the agent has so used the funds entrusted to him, because, until the time for accounting has arrived, the agent has full control of the funds placed in his hands under the contract.

The seventh and eighth paragraphs of the answer deny that a demand for an accounting was made ; but they neither deny nor avoid the matters averred as an excuse for not making the demand. Since, as we have seen, the excuse is valid, an answer which neither avoids nor denies it must be bad.

The tenth paragraph of the answer of the sureties admits. the signing of the bond sued on, and avers that they permitted Wilson to take possession of it, " but gave no one any

authority, except such as may be implied from that act, to deliver it to the appellee." If this answer amounts to anything at all—a question we need not stop to consider or decide—it is a mere argumentative denial of the execution of the bond, and is embraced in the general denial pleaded in the first paragraph of the answer. No harm resulted from the ruling declaring it bad, even though the theory that it is good should be the correct one.

The fourth and fifth paragraphs of the answer are substantially the same, and were both struck out on motion of the appellee. These paragraphs allege that the town bonds were delivered to Wilson eight months prior to the execution of the obligation sued on; that they had been disposed of by him prior to that time; that the appellee knew this fact and concealed it from the sureties, and represented to them that Wilson had in his hands, at the date of the execution of their obligation, "all the bonds then and before that time entrusted to him;" that they were ignorant of the fact that he had converted the proceeds of the bonds placed in his hands to his own use, and would not have undertaken as sureties for him had they known that he had appropriated the proceeds of the bonds to his own use.

The appellee defends the action of the court in striking out these answers upon the ground that they are the same as other paragraphs of the answer. It is argued that the same evidence, which these paragraphs would have entitled the appellants to give, was admissible under the third paragraph, which was a general plea of want of consideration. This argument is unsound.

It is the duty of a principal, who accepts surety for the faithful performance of duty by his agent, to act in good faith toward the person undertaking as surety, and he is guilty of fraud if he conceals any material fact which it was his duty to disclose, or makes a false statement of any material matter. The answers before us charge that the appellee's trustees fraudulently and falsely represented that the agent had

accounted for all bonds received by him, and this was a material matter. The answers, therefore, state the defence of fraud, which is essentially different from that of want of consideration. Fraud must be specially pleaded. *Curry* v. *Keyser*, 30 Ind. 214; *Joest* v. *Williams*, 42 Ind. 565 (13 Am. R. 377); *Langsdale* v. *Girton*, 51 Ind. 99.

The plea of want of consideration requires for its support evidence essentially different from that required to support the defence of fraud. Such a plea is not supported by proof of a partial failure of consideration. *Crow* v. *Eichinger*, 34 Ind. 65; *Smock* v. *Pierson*, 68 Ind. 405 (34 Am. R. 269); *Wheelock* v. *Barney*, 27 Ind. 462. As the defences of want of consideration and of fraud are so different in their character, separate pleas are necessary, and if separate pleas are required, then the defence of fraud can not be made available under the plea of want of consideration.

A surety may defeat an action upon the ground of fraud, although his principal may have received all the consideration for which he bargained. If the surety proves that the creditor fraudulently concealed a material fact, or made a false representation of some material matter, he is entitled to release without supplementing this proof by evidence of want or failure of consideration. 1 Story Eq. 215; *Graves* v. *Lebanon Nat'l Bank*, 10 Bush, (Ky.) 23; S. C., 19 Am. Rep. 50; *Wayne* v. *Commercial National Bank*, 52 Pa. St. 343; *Railton* v. *Mathews*, 10 Clark & F. 934; *Ham* v. *Greve*, 34 Ind. 18. On the other hand, proof of want of consideration would entitle the surety to a discharge, irrespective of the question of fraud.

It is true of the great majority of cases that the consideration moves to the principal, and it certainly can not be the law that in such cases the defence of fraud can only be made available to the surety by showing that there was a want of consideration. It is plain that the principal may have received all the consideration agreed upon, and yet the surety be entitled to defend upon the ground of fraud, for, as he received.

no actual benefit from the contract, there is in his hands no real consideration to be accounted for or returned. What the rule is in cases where the surety receives a consideration of value distinct and different from that moving to the principal, we need. not enquire ; for here there was no consideration except such as moved to the principal.

It is argued by the appellee that the evidence which would have been competent under the fourth and fifth paragraphs, had they been allowed to stand, was admissible under the general denial, and for that reason there is no error in the ruling striking them out.

We have already shown that the general rule is that fraud must be specially pleaded, and is not admissible in evidence under the general denial. Unless this case forms some exception to the general rule, the defences stated in the rejected paragraphs were not embraced within the denial pleaded in the first paragraph of the answer.

The argument of counsel is this :    " If these answers do not amount to a plea of want of consideration, all the material facts therein alleged are admissible under the general denial, as they simply negative certain facts stated in the complaint. The complaint avers that the bonds in question were delivered to Wilson at the time the bond was executed, and afterwards converted by him to his own use." We have quoted all that counsel say upon this point, and find nothing in their statement upon which their position can be sustained. The sureties were entitled to defend upon the ground of fraud, and the appellee could not anticipate this defence by alleging matters which were not essential to the cause of action ; and it is only such matters as the plaintiff is bound to prove to make out a *prima facie* case, that the general denial puts in issue. It does not entitle the defendant, except in cases where express provision to the contrary is made, to give affirmative defences in evidence.

There is, however, no necessity for discussing this case upon the theory that the complaint avers that there was a delivery

to Wilson of all of the 210 town bonds at the time of or subsequent to the execution of the obligation in suit, for the allegation upon this point is essentially different. The allegation is that Wilson had in his hands, before the execution of the obligation, sixty, or, as some of the paragraphs allege, eighty, of the bonds, and that the verbal agreement was that he should return them. It is very evident, therefore, that the general denial did not require proof of delivery of all the town bonds subsequent to the execution of the obligation in suit, and, this being so, it is plain that the sureties had a right to plead that fraudulent representations were made to them concerning the delivery and disposition of the sixty bonds placed in Wilson's hands prior to the execution of the obligation sued on.

There is an important difference between the issue presented by the general denial and the answers setting up fraud. If the appellants could show that fraudulent representations were made concerning the agent's disposition of part of the bonds, or could show false and fraudulent statements as to the time of delivery, they would be entitled to relief, although some of the bonds may have rightfully gone into the agent's hands under the contract. This is illustrated in some of the cases we have cited, which hold that where a bank cashier is at the time a defaulter and known to be so by the bank, and that fact is concealed from the sureties, they are entitled to a discharge, although the bank may thereafter deal with him as the contract requires. Again, if the town had justly delivered to Wilson some, but not all, of the bonds, and there was no fault on the part of its officers, it would be entitled to recover the value of the bonds so delivered; and no evidence of fraud could be given under the general denial which would defeat this right; whereas, if the town officers had been guilty of fraud, and the defence was properly pleaded, the sureties would be entitled to recover, although they could show that the false statements extended only to the disposition made of part of the bonds.

If Wilson received part only of the bonds provided for by the obligation executed by the sureties, and these were delivered in good faith, and the appellee's officers were not guilty of any fraudulent or wrongful act, then the appellee would be entitled under the general denial to recover for such as were so received by Wilson and not accounted for as the obligation required, but this would not be so if the bonds had been previously delivered and a fraudulent appropriation been made by him, known to his principal, and the fact wrongfully concealed from the sureties. The defence of fraud did not, as is evident from what has been said, require the appellants to prove that all of the bonds had been wrongfully disposed of, for they would have made good their defence of fraud by proof that the agent was a defaulter and known to be such by the appellee at the time the obligation sued on was executed, and that this fact was fraudulently concealed from them.

It is a familiar rule that sureties are not held beyond the terms of their contract, and in this case the contract is that they shall be liable for " bonds this day," that is the day the obligation was executed, " delivered to " the agent. Their undertaking was to account for such bonds as were then or subsequently delivered to the agent, and a false representation that none had been previously delivered, or a fraudulent concealment of that fact, was a wrongful act, materially affecting the rights of the sureties. It was, therefore, a material and important defence that the rejected answers presented. Whatever view may be taken of the case, it is clear that the court erred in refusing the appellants the benefit of the defence set forth in those paragraphs.

Where good answers are held bad on demurrer or are rejected on motion, the defendant is entitled to the benefit of the exception reserved upon that ruling, unless there are others entitling him to put in evidence substantially the same matters as are pleaded in the answers held bad or rejected. The evidence is not to be looked to for the purpose of dis-

covering whether the ruling did or did not do him harm.. Where a plea is struck down, the presumption is that the rule of law involved in the ruling was acted upon throughout the case, and the defendant is not bound to again present the question. An objection once well and fully presented', and properly and adequately reserved, does not need to be repeated at subsequent stages of the case. A defendant who receives the judgment of the court upon his answer may accept that ruling as the declaration of the court that it would be useless to offer evidence under it, for if fully proved the defence set forth would not be allowed to prevail. Nor would it be just to a defendant, who has put in a valid plea, to hunt, through the evidence to ascertain whether he was or was not injured, for he is entitled to the benefit of the explicit admission made by the demurrer. We need not, however, pursue this discussion further, for the question is firmly settled by authority. *Friddle* v. *Crane*, 68 Ind. 583; *Johnson* v. *Breedlove*, 72 Ind. 368; *Abell* v. *Riddle*, 75 Ind. 345; *Over* v. *Shannon*, 75 Ind. 352; *Conyers* v. *Mericles*, 75 Ind. 443; *Sims* v.. *City of Frankfort*, 79 Ind. 446.

We do not deem it necessary to examine the questions presented upon the ruling denying a new trial, as the case must be again tried.

Judgment reversed.