Nixon *v.* The State, *ex rel.* Lamb, Auditor, *et al.*

---

### No. 11,331.

### Nixon *v.* The State, ex rel. Lamb, Auditor, et al.

County Treasurer.—*County Commissioners.* —*Authority.* —*Right to Buy Bonds.*—*County Property.*—A county treasurer who has received from his predecessor United States bonds belonging to the county, which had been purchased by order of the county board, and held as county property, must, on sale thereof, account for the entire proceeds thereof, including any premium, and he can not, for his own profit, question the power of the county to make the purchase.

From the Fountain Circuit Court.

*T. F. Davidson,* for appellant.

*L. Nebeker* and *H. H. Dochterman,* for appellees.

ELLIOTT, J.—The complaint of the relator alleges that on the 16th day of June, 1873, the board of commissioners of Fountain county, issued bonds of the county for the purpose of building a jail, and that to pay interest on these bonds, and to create a sinking fund for the payment of the principal, taxes were duly levied; that the taxes levied exceeded the interest in the sum of $60,000, and that sum was placed in the hands of Isaac Haupt, then the treasurer of the county; that on the 10th day of June, 1879, the board of commissioners, at the request of Haupt, made the following order: "It is ordered by the board that the county treasurer be and he is hereby authorized to invest in United States bonds on the best terms obtainable, from time to time, such amounts of county funds as may accumulate in the county treasury, over and above the amounts necessary to defray current expenses of the county, and the county treasurer shall hold said bonds in the treasury for the payment of the county bonds issued for the payment of the cost of the construction of the county jail, when the same become due." It further alleged, that pursuant to this order Haupt, as treasurer and agent of the county, purchased government bonds to the amount, in all, of $50,000, and that such bonds were registered as owned by "Isaac Haupt, treasurer of Fountain county, Indiana;" that the purchase of the bonds was reported by Haupt to, and his action fully confirmed by, the board of commissioners; that when he made his settlements in June, 1880, and in June, 1881, the bonds were treated as the property of the county, and as such accounted for; that Isaac Haupt's term of office expired on the 15th day of August, 1881, and on that day the appellant, as his successor, took possession of the office; that the latter received the bonds with other property, for and in behalf of the county, and executed the following receipt:

Nixon *v.* The State, *ex rel.* Lamb, Auditor, *et al.*

" $59,541.58.          COVINGTON, IND., Aug. 14, 1881.

" Received of Isaac Haupt, ex-treasurer of Fountain county, Indiana, the sum of fifty-nine thousand five hundred and forty-one $\frac{58}{100}$ dollars, being the balance due said county on account of county funds held by said Haupt at the close of his term of office as county treasurer, as per exhibit this day made, said amount consists of the following items:

Five per cent. United States bonds at par value . $25,000 00
Four per cent. United States bonds at par value . 25,000 00
          " Currency . . . . . . . . . . . . . . .   9,541 58

          " Total . . . . . . . . . . . . . . . . . $59,541 58
                                        " HENRY P. NIXON,
                          " Treasurer of Fountain County, Indiana."

It is also alleged in the complaint, that Nixon made report, as treasurer, to the board of commissioners, but the board refused to approve it, because it did not account for the bonds received of his predecessor in office; that he was afterwards ordered to sell the bonds, and did sell them, but refuses to account for the premium received thereon.

We do not deem it necessary to inquire whether the county had or had not authority to direct the then treasurer, Haupt, to buy the bonds of the United States, for we are satisfied that Nixon has no right to contest his principal's ownership of the bonds. He received them as the property of the county from his predecessor in office, and he must account for them as the property of the county. It is not for him to dispute the authority of the county to acquire and hold property; he is charged with no such duties, and invested with no such functions. His duty was to care for the property entrusted to his custody, and not to dispute the right of the county to entrust him with it. In many cases the principle which rules the case at bar has been declared and enforced. It was said, in *Wilson* v. *Town of Monticello*, 85 Ind. 10, that " It is a familiar doctrine that an agent who receives money on account

114    SUPREME COURT OF INDIANA,

Nixon v. The State, ex rel. Lamb, Auditor, et al.

of his principal can not escape an accounting upon the ground that his principal had no right to engage in the transaction which yielded the money." And in the earlier case of *City of Indianapolis* v. *Skeen*, 17 Ind. 628, this doctrine was applied to a case where the agent attempted to evade accounting for bonds converted by him on the ground that the city had no authority to issue them. The cases of *Daniels* v. *Barney*, 22 Ind. 207, *United States Ex. Co.* v. *Lucas*, 36 Ind. 361, and *Reed* v. *Dougan*, 54 Ind. 306, assert, very emphatically, the doctrine that where an agent receives money or property for his principal, he is estopped to deny the principal's right to it. A treasurer, or other officer, who receives property for a public corporation and as its agent, has no right to inquire into the authority of the corporation to acquire the property, but is bound, when called upon, to render a due account. *Ross* v. *Curtiss*, 31 N. Y. 606; *People, ex rel.*, v. *Brown*, 55 N. Y. 180. Many cases might be cited in support of the general principles we have stated, but we deem it necessary to cite only a few of them: *State* v. *Tumey*, 81 Ind. 559, vide opinion, p. 564; *Boehmer* v. *County*, 46 Pa. St. 452; *Wylie* v. *Gallagher*, 46 Pa. St. 205; *McLean* v. *State*, 8 Heisk. 22, vide opinion, p. 255; *Miller* v. *Moore*, 3 Humph. 188; *McGuire* v. *Bry*, 3 Rob. (La.) 196; *Mississippi Co.* v. *Jackson*, 51 Mo. 23.

It is a familiar rule that profits accruing from the property of a principal belong to him, and not to the agent. This principle runs through all cases where there is a relation of trust, and it is everywhere held that the profits belong to the owner of the property, and not to the mere custodian. A forcible illustration of the application of the rule is furnished by the case of *Hadley* v. *State, ex rel.*, 66 Ind. 271, wherein it was held that the treasurer of a school corporation is bound to account for interest accrued on warrants issued to him by the city officers. The case cited is identical in principle with the present, and controls it.

The question between Nixon and the relator is entirely different from what would have been the question had his pred-

ecessor refused to buy the bonds and insisted upon his right to retain the money, for, when Nixon came into office, the property had been acquired, and he received the bonds as property, and not as money. As said in a similar case: "It does not lie in his mouth to repudiate his solemn official acts for his 'individual benefit." *Ham* v. *Silvernail*, 7 Hun, 33. The plainest principles of the law of estoppel, as well as of justice, require that he should not be permitted to reap a profit by denying what he had solemnly affirmed.

County commissioners have extensive, although by no means unlimited, powers over county finances, and when they accept the 'settlement of county officers and take property, their acts will generally be sustained. In the present case, they had authorized Haupt to buy these bonds, had approved his current and final reports showing the purchase and possession of them, and Nixon had treated them as the property of the county. Under these circumstances, he can not be heard to aver that the board of commissioners transcended its powers. The case is not at all like that of county officers doing a thing made illegal by statute, nor is it like that of officers going entirely outside of the line of their duties. A review of the adjudged cases will show that the purchase of the government bonds was not prohibited by statute, nor, indeed, entirely beyond the authority of the commissioners. In *Halstead* v. *Board*, etc., 56 Ind. 363, it was held that the board of commissioners had authority to lend county funds, and that they might under this authority buy and take an assignment of a mortgage, although the transaction was not technically a loan. It was said in *Board*, etc., v. *Saunders*, 17 Ind. 437, that "We are of opinion that under these and various other statutes that might be referred to, the board of county commissioners have a supervisory control over the finances of the county, and consequently have the power to settle in reference to the same, and to bind the corporation by such settlement." In *Vanarsdall* v. *State, ex rel.*, 65 Ind. 176, it was held that the board had authority to take

the assignment of a mortgage in payment of a claim due the county. A distinction was drawn between the violation of an express statute and a mere want of power in the case of *Sturgeon* v. *Board, etc.*, 65 Ind. 302, and it was held that a note given for an unauthorized loan was not void. In *Shannon* v. *O'Boyle*, 51 Ind. 565, and *O'Boyle* v. *Shannon*, 80 Ind. 159, it was decided that the commissioners have general authority over county property. In speaking of the board of commissioners it was said, in *State* v. *Clark*, 4 Ind. 315, that " It has the care of the property of the county, as well as its supervision and management." The decisions of other courts are in harmony with our own. The court said in *Boehmer* v. *County*, 46 Pa. St. 452, that " The county commissioners are the contracting power and the fiscal agents for the county;" and it was held that a county treasurer and his sureties were liable for the conversion of county funds, although the commissioners had no authority to borrow the money which was converted by the treasurer. Speaking of · the board of commissioners the Supreme Court of the United States said: " It is for all financial and ministerial purposes the county." *Levy Court* v. *Coroner*, 2 Wal. 501. The cases agree that the board may compromise with a defaulting treasurer and accept property in satisfaction of the claim of the county it represents. *State Bank* v. *Chapelle*, 40 Mich. 447; *Board, etc.*, v. *Bowen*, 4 Lans. (N. Y.) 24; *Shanklin* v. *Board, etc.*, 21 Ohio St. 575. In the case last cited it was held that the board might accept from the defaulting officer a certificate of deposit, and that when accepted it became county property. In the course of the opinion it was said of the board of commissioners that " it is in an enlarged sense the representative and guardian of the county, having the management and control of its financial interests." It seems clear, upon these authorities, as well as upon principle, that as the board of commissioners had accepted the government bonds as the property of the county, they became, so far at least as the appellant is concerned, county property, and he can not be per-

mitted to question the action of the commissioners for the purpose of seizing the profit accruing from the investment.

Judgment affirmed.

Filed March 27, 1884.

## On Petition for a Rehearing.

ELLIOTT, C. J.—Counsel for appellant insists that we did not correctly state the averments of the complaint upon the subject of the ownership of the bonds, and asserts that it is not averred that they belonged to the county and were so treated prior to the appellant's induction into office. The record directly and unmistakably refutes counsel's assertion. It is repeatedly averred that the bonds did belong to the county, and were delivered to and received by the appellant as the property of the county. We copy one of the many averments of the complaint: "That in pursuance of said order and under and by virtue of the same, and not otherwise, the said Isaac Haupt, as treasurer of said county, and as agent of the board, did, on or about the 26th day of November, 1879, for the use and benefit of said county, purchase of the United States registered bonds of said government."

The answer does aver that the appellant did not have any agreement with his predecessor that he should hold the bonds as the property of the county, but it contains no denial of the receipt set forth in the complaint, and that shows how the bonds were received and held. It is true that a receipt may be explained or contradicted, but there are no facts stated explaining or contradicting it, and, therefore, it is admitted to be correct. The recitals of a receipt are, as everybody knows, *prima facie* true. But suppose it to be true that appellant had signed no such receipt, and had made no agreement with his predecessor, still his answer does not meet the material averment in the complaint that the property belonged to the county. We suppose it to be perfectly clear that an incoming treasurer can not acquire title to property which the county owns because his predecessor omits to notify him that

the county does own it. If it were conceded—a concession the record does not warrant—that every other material allegation of the complaint was fully answered, the answer would still be bad for failure to answer this one material averment. An answer in confession and avoidance must avoid not merely some but all of the material averments of the complaint. The material fact that the bonds were bought with county money for the county, and were held by the appellant's predecessor as county property, is not denied directly or indirectly; and with this material fact admitted, the appellant has neither a legal nor a moral right to claim the profits earned by the county property. But there is more than this fact admitted, for there is no attempt to show any mistake or untruth in the statements of the receipt, and until something of the kind is shown, the recitals of that instrument bind the appellant.

The authorities cited in the original opinion show that the county may buy property, and if it may do this there is no reason why it may not buy government bonds where it is requested by the treasurer, and in cases where it becomes necessary for the protection of the fund to make some investment. It is shown in this case that the treasurer desired the investment to be made in order to ensure the safety of the fund, and that it was made long before the appellant came into office. No rule of law or ethics authorizes an incoming treasurer to sit in judgment on the acts of his predecessor and of the board of commissioners performed long before he entered upon his official duties. If a county board buys property it has no right to buy, the treasurer can not seize it for his own profit. There is a way to try such a question, but it is not the one adopted by the appellant.

The case of *Board, etc.,* v. *Fennimore,* 1 Coxe (N. J.) 242, so much relied upon by the appellant, is not in point. We give the entire opinion: "*Per Curiam.*—The evidence is admissible; these bonds must have been received as cash, for the defendant, in the capacity of county collector, had no

right to receive them in any other way. He is therefore answerable as for so much cash; he makes himself the debtor by receiving them. Besides, after having admitted the correctness of the charge against him on a former occasion, he will not be permitted, without showing some good reason, to question it now." We have no such case here, for there is no question as to what the treasurer may receive in payment. Here the funds had been collected, and were, at the request of the treasurer and by order of the board of commissioners, invested in government bonds, and these bonds treated as the property of the county.

The appellant did not purchase the bonds; he simply received them as property turned over to him by his predecessor in office, and was not entitled to notice of how they were held; but if he had been, the manner in which such bonds were registered was sufficient to impart notice of the fact that Haupt did not hold them in his individual right. *Bundy* v. *Town of Monticello*, 84 Ind. 119; *Shaw* v. *Spencer*, 100 Mass. 382. Not only did the registry impart notice, but the face of the bonds themselves also gave definite information of the official character of the person to whom they were payable.

We might have disposed of the questions now made upon the answer by treating them as waived, by a failure to discuss them in the original brief, but we have thought it better to dispose of them by a decision upon their merits.

Petition overruled.

Filed June 4, 1884.