## HOGUE ET AL. v. STATE, EX REL. BOARD, ETC.

[No. 3,593. Filed April 29, 1902. Rehearing denied June 25, 1902. Transfer denied October 16, 1902.]

MUNICIPAL CORPORATIONS.—*School Trustees.—Bonds.—Sureties.*— By the act of 1865 (Acts 1865, p. 3) it was made the duty of the board of trustees of each incorporated town in the State, at the first regular meeting in April of that year, and biennially thereafter, to elect three school trustees who were required, before entering upon the duties of their office, to take and subscribe an oath and give bond similar to the oath and bond of township trustees. The act of 1873 (§§5975, 5976 Burns 1901) makes provision for aid in building schoolhouses, and provides that the trustees before receiving the funds from the board of trustees of the civil city shall execute additional bonds. The act of 1875 (§5915 Burns 1901) makes the treasurer of the board alone responsible for all money that comes into his hands "by virtue of his office." *Held*, that where the treasurer of a school board received funds from the city trustees for the erection of a schoolhouse without giving an additional bond, the sureties on his general bond are liable for the faithful application thereof.

From Hendricks Circuit Court; *T. J. Cofer*, Judge.

Action by the State on the relation of the board of school commissioners of the city of Indianapolis against Samuel A. Hogue, treasurer of the school board of West Indianapolis, and his bondsmen. From a judgment in favor of relator, certain defendants appeal. *Affirmed.*

Hogue v. State, ex rel.

*W. V. Rooker*, for appellants.
*W. T. Brown* and *C. W. Smith*, for appellee.

WILEY, J.—Appellant Hogue was a member of the board, of school trustees of West Indianapolis, and was elected treasurer of said board. He gave a bond as required by statute, and this action was brought on that bond against him and his sureties. It was alleged that he failed to account for certain funds that came into his hands by virtue of his official position and converted the same to his own use. The pleadings in the case are voluminous, but as the court made a special finding of facts and stated its conclusions of law thereon, we do not deem it important to give even an abstract of the pleadings, as the rights of the parties may be fully determined from the facts found and the conclusions of law.

By the special findings the following material facts are established: That on June 4, 1894, the city of West Indianapolis was a municipal corporation under the general laws of the State; that on that day there was a duly organized board of trustees for the school city of West Indianapolis, and said Hogue was on said day elected treasurer of said board; that on June 6, 1894, said Hogue executed his official bond as such treasurer with appellants Marmon and Nordyke as sureties; that he entered upon the duties of his office, and received from his predecessor in office the following funds:   Library fund, $553.17; special fund, $225.53; tuition fund, $114.53; that thereafter, and within the first term for which he was elected, he received the following funds: library fund, $910.53; special fund, $4,597.66; tuition fund, $14,319.29; that on July 30, 1894, there was presented to the common council of West Indianapolis the following communication: "To the Honorable Body, the Common Council of the city of West Indianapolis. Gentlemen Sirs: The board of school trustees of the city of West Indianapolis, Indiana, beg leave to re-

port and show to your honorable body that there is a demand and a necessity existing for the building of additional school rooms at building No. 1, at corner of Howard and Reisner streets, to accommodate all the children of school age; the estimated cost of said additional four rooms and fixtures will be $1,500, which amount we have not on hand, nor in immediate sight for such purpose. Therefore, we pray you that our action be approved, and that we be authorized to contract for construction of said buildings and fixtures. This in accordance with §4491, school laws of Indiana. July 28, 1894. West Indianapolis School Board. James M. Tooley, president. S. A. Morgan, secretary. S. A. Hogue, treasurer."

That said common council took such action upon the communication as that it was ordered that said communication, with accompanying affidavits, be placed on file, and that a warrant for $1,500 be drawn on the city treasurer, payable to said school board; that the minutes of civil city of West Indianapolis do not disclose the character of the affidavits referred to and that the evidence does not disclose the precise contents of such affidavits, but that the minutes of the board of school trustees recites the substance thereof as follows: "School board then made affidavit before Oliver E. Williamson that the above petitioned for would be used in payment for contract and fixtures for additional buildings;" that thereafter a warrant was issued by the mayor of said city, attested by the clerk, for $1,500, and upon its presentation to the treasurer he gave a check for said sum, payable to the order of the school trustees of West Indianapolis, which check was indorsed by S. A. Morgan, James M. Tooley, and Samuel Hogue, who constituted the board of trustees of said school city; that the money was drawn thereon and paid over to said Hogue, who was then treasurer of said board; that said trustees, Morgan, Tooley, and Hogue did not execute any bond to secure the application of said sum to the building of said

additional rooms; that at the time Hogue received said sum of $1,500 he declined to be held responsible on his general bond for its faithful application; that during his term of office, covered by the bond in suit, said Hogue paid out, in discharge of legitimate claims against said school city, all the funds received by him except the sum of $2,183.39, which amount he has failed to account for or pay over, and that he converted the same to his own use; that said sum is now due and remains wholly unpaid; that prior to the beginning of this action demand was made upon him for settlement of his accounts as such treasurer, and the payment of the amount found due, which demand was refused; that on March 15, 1897, by an ordinance duly passed by the common council of the city of Indianapolis, the territory included in the city of West Indianapolis was annexed to the city of Indianapolis; that after said annexation the treasurer of the school board of said city of West Indianapolis turned over all books and papers of his office to the board of school commissioners of the city of Indianapolis.

As conclusions of law the court stated: (1) That the action was properly prosecuted in the name of the State on the relation of the board of school commissioners of the city of Indianapolis; (2) that Hogue, as principal, and Nordyke and Marmon, as sureties, were liable on his official bond for the entire amount of $2,183.39; (3) that the appellee was entitled to recover said sum of $2,183.39, together with a penalty of ten per cent., against all of the appellants.

Appellants Nordyke and Marmon alone prosecute this appeal. By their assignment of errors they have raised many questions for review, but all such questions were expressly waived by their counsel in oral argument, except the single question of the liability of the sureties for the $1,500 paid to the school board by the civil city, and which amount was turned over to Hogue as treasurer. Aside from this item, counsel stated in oral argument that he

could not ask a reversal. The ground for contesting appellant's liability for the misappropriation of this item rests upon the proposition that it was not covered by Hogue's official bond, and hence the sureties are not liable. A proper determination of the question requires an inquiry into the statutory provisions relating to the duties and liabilities of members of school boards, and especially as to the duties and liability of the treasurer of such boards.

A brief review of the history of legislation and the appointment and duties of school trustees, etc., may be useful. Going back to 1865, we find that the legislature passed a comprehensive act providing for a general system of common schools. By §5 of that act (Acts 1865, p. 3, *et seq.)* it was made the duty of the board of trustees of each incorporated town in the State, at the first regular meeting in April of that year and biennially thereafter, to elect three school trustees. They were required to subscribe an oath and give bond, similar to the oath and bond of township trustees. In 1875, a radical change was made by the legislature as to the election of school trustees, the organization of school boards, providing for bonds, etc. By that act the board of trustees of each incorporated town was required at the first regular meeting in June to elect three school trustees, who were to hold their offices one, two, and three years respectively, and to elect annually thereafter one school trustee who was to hold his office for three years. By that act the trustees so elected were to constitute the "school board" of the town, and before entering upon the duties of their office they were required to take an oath to discharge their duties faithfully. They were required to meet within five days after their election, and organize by electing one of their number as president, one as secretary, and one as treasurer.

Before entering upon the duties of his office the treasurer was required to execute a bond to the approval of the county

auditor, in a sum not less than double the amount of money that might come into his hands within any one year "by virtue of his office." The president and secretary were required to give bond in any sum not less than one-third of the treasurer's bond. Acts 1875, p. 135, §5915 Burns 1901.

By the act of March 8, 1873 (Acts 1873, p. 60, §§5975, 5976 Burns 1901), it was provided that if the school trustees of an incorporated town shall determine to erect any school building, and have not the funds on hand to pay for the same, such trustees might file with the board of trustees of the civil city, a request for aid, supported by oath, showing the amount required, etc., and that such latter board might issue the bonds of the town, not exceeding $50,000 for the purpose of raising the funds so required. By the second section of that act the proceeds of such sale of the bonds should be turned over to the school trustees for the purpose required, and such trustees, before receiving the money, had to give an additional bond in a sum not less than the full amount of said money, conditioned for the honest and faithful application of such money to the purpose for which it was provided; and by express provision of the statute, the trustees and their sureties were made liable on such additional bond for any waste, misapplication, or loss of such money.

By the act of 1865, *supra,* it seems plain that the three school trustees were to give their separate bonds. These may fairly be considered as a general bond. By the later act requiring the school trustees to execute an additional bond before receiving special funds from the town or city from the sale of bonds, it is not clear from the language of the statute, whether they were to execute several bonds or a joint bond, but we are inclined to the opinion that the statute contemplates a joint bond; for at the time of the passage of that statute, there was no provision for the school trustees to elect one of their members treasurer, and in the

absence of such officer, they would all be equally liable for money so received. Until the act of 1875, *supra,* there was no statutory provision for the election of executive officers of the board of school trustees. By the provisions of the act of 1875, the specific duties of the three executive officers are not defined, but the statutory designation of them sufficiently defines their duties.

It is clear that the legislature intended that the treasurer of such board should alone be charged with and be responsible for all the school revenues belonging to such school corporation. This is made manifest by designating him as "treasurer" and in fixing his bond in double the amount of money that might come into his hands in any one year "by virtue of his office." It is not necessary to the decision of this case for us to decide whether the act of 1875 repealed §2 of the act of 1873, requiring the school trustees to execute an additional bond to protect special funds coming into their hands, as in the act provided. When the $1,500 in controversy was paid to the board of school trustees by the civil city of West Indianapolis the proper custodian of that fund was, in our judgment, the treasurer of the school board, and it was properly turned over to him. Whether or not he should have been required to give additional bond, or is liable upon his original bond, are the questions for our determination. If the failure of all the members of the school board to give an additional bond, within the letter of the statute cited, served to release them from liability, then the recovery in this case against the sureties on Hogue's bond can not be upheld. By the act of 1875, providing for the organization of school boards by the election of executive officers, and requiring the treasurer to execute a bond for double the amount of revenues that might come into his hands in any one year by "virtue of his office," it is manifest that the intention of the legislature was to place the custody of all such funds in the hands of the treasurer, and make him alone responsible therefor.

The language of the statute, "by virtue of his office," is broad and comprehensive, and must be construed to mean all funds and moneys for school purposes, from whatsoever source derived.

This construction excludes the proposition contended for by appellants, that the special fund of $1,500 was to be and remain in the custody of the three members of the board, and that they were each individually chargeable therewith. The most favorable view to appellants that can be suggested is that there was an irregularity in the manner of the application of the school board to the city authorities for aid, and also in the manner in which the money was authorized to be paid by the city. If the application had been made and acted upon in strict compliance with the provisions of the statute, and the money had been paid over to the school board without requiring the school trustees to execute a bond conditioned for the faithful application of the funds to the purpose intended, we would still be confronted with a mere irregularity. It having been determined as a fact that the money actually found its way into the hands and possession of the treasurer "by virtue of his office," where, we think, it rightfully belonged, the public interest, good conscience, and sound reason require that he and his sureties be held responsible for it under his general bond. The authorities support this conclusion.

In the case of *Wylie* v. *Gallagher*, 46 Pa. St. 205, the sureties on a county treasurer's bond were held liable for a balance found due upon a settlement of his accounts, though he was charged therein with scrip issued by the commissioners, in violation of law, but which he had received, deposited, and paid out as money. Again in the case of *Boehmer* v. *County of Schuylkill*, 46 Pa. St. 452, it was held that the sureties on the official bond of a county treasurer were liable for the balance found to be due by him, whether or not the commissioners had exceeded their legal powers in borrowing money; and, if raised by them and brought to

the county treasury, the treasurer is bound to keep and disburse it, and for default he and his sureties were responsible. The reasoning of the court in that case and the law is so clearly stated that we feel justified in quoting the following: "That the surety of a defaulting county treasurer is liable for moneys that come into the treasurer's hands in behalf of the county, and cannot discharge himself by showing that the commissioners exceeded their duty, and even violated a statute in their manner of bringing money into the treasury, was ruled at our late Pittsburg session, in the case of *Wylie* v. *Gallagher,* from Fayette county, *supra,* 205. In that case the county commissioners had issued scrip to the amount of $20,000, contrary to an act of Assembly, but the treasurer had received and used the scrip as money, and having failed to account for part of it in his settlement with the county auditors, his sureties were held liable on the principle that their obligation on the official bond was coextensive with that of the treasurer. We thought that there could be no doubt that the official bond bound the treasurer to account for all moneys received on behalf of the county, without regard to the source from which they were derived, and if it bound *him* it necessarily bound the sureties. * * * The county commissioners are the contracting power and the fiscal agents for the county. No matter whether they have or have not legal authority to borrow money by issuing scrip, or any other form of security, if they do it and bring the money into the county treasury, the treasurer is bound to keep it and disburse it according to law, and if he fails in this duty his sureties are liable on the official bond. For what else, indeed, are the sureties required than to answer for official defaults of the principal? And what default of the principal can be more palpable than a failure to account for moneys actually received? Is it any defense for him that the commissioners transcended their legal powers in obtaining the money? If they borrow money on the credit of the

county without authority of law, is the treasurer to appropriate it to his own use without account? These questions answer themselves, and if such defenses would be preposterous when set up by the treasurer in defense of himself, they are scarcely better for his surety. In no class of obligations is it so important as in official bonds to maintain the principle, that the suretie's obligation is coextensive with that which the bond imposes upon the principal." These two Pennsylvania cases are cited with approval in the case of *Wilson* v. *Town of Monticello,* 85 Ind. 10.

*Village of Olean* v. *King,* 116 N. Y. 355, 22 N. E. 559, is in point. There, King was appointed collector of taxes under the provisions of the charter, and gave a bond conditioned that he would faithfully account for all moneys coming into his hands "by virtue of his office." By the warrant issued to him by the village authorities he was required to return the warrant and pay over the money within a limited period. At the expiration of that period the warrant was extended without the consent of the sureties. It was also claimed that the tax levy was invalid, and the sureties defended upon the ground that they were relieved from liability by the extension of the warrant, and the invalidity of the levy. By the charter the board of trustees were given authority to renew the warrant from time to time. It was held that such renewal without the consent of the sureties did not discharge them, and that they must be deemed to have executed the bond with knowledge of this provision. It was also held that bonds of that character must be construed in such way as to secure the fidelity of the officer under the law, and regulations as to the time within which taxes should be collected and the warrant returned are mere directions to the collector, not essential parts of the contract with the sureties. Upon the question of the alleged invalidity of the tax levy the court said: "Assuming it to be open to the objection which the defendants made to it, that fact afforded no

justification to the collector in refusing to make his return of the warrant in the manner required by the charter.    While a tax collector may decline to proceed in the collection of a tax illegally levied,    * * *   he may do so only for his own protection.    Having collected a tax, he cannot then question the right of the proper authority to receive it, but must pay it over."    Citing *O'Neal* v. *Board, etc.,* 27 Md. 227; *Commonwealth* v. *City of Philadelphia,* 27 Pa. St. 497; *Waters* v. *State,* 1 Gill 302; *Smith* v. *Titcomb,* 31 Me. 272; *People* v. *Brown,* 55 N. Y. 180.    In the case from which we last quoted it was further said:    "The obligation of the sureties was not, therefore, limited to the collection of the particular tax in question or to the performance of the collector's duty under the warrant of July 11th, but included all duties which by virtue of his office fell to the collector during his term of office."

The case of *People* v. *Vilas,* 36 N. Y. 459, 93 Am. Dec. 520, was an action against sureties on an official bond of a loan commissioner, conditioned that said commissioner would faithfully discharge his duties pursuant to a certain statute recited in the bond.    Subsequently the legislature passed an act, the effect of which was to add $500 to the fund in the commissioner's hands.    It was held that the sureties were liable for the sum subsequently placed in the hands of the commissioner by the act of the legislature. In *People* v. *Pennock,* 60 N. Y. 421, it was held that an official bond should be construed, and the liabilities of the sureties limited, with reference to the statutes making a supervisor custodian of the public money, and that such statutes form a part of the contract of the sureties.

The statute providing for the organization of school boards, whereby executive officers are chosen, while it does not in specific terms make the treasurer of such board the custodian of the school revenues, it must be construed to cast upon such treasurer the exclusive custody of such funds, and makes him liable for the conversion or mis-

appropriation of the same. The statute will not bear any other construction. He being custodian of the funds, it can make no difference from what source they are derived, and, this being true, the sureties are presumed to have contracted as such, in view of all the obligations cast upon them by law.

*Middleton* v. *State,* 120 Ind. 166, was an action upon the official bond of a city clerk. By virtue of his office certain moneys had been paid to him for which he failed to account. The sureties defended upon the ground that the ordinance under which the money was paid to the clerk was void, for the reason that the statute required that it be paid to the treasurer. It was held that the principal and sureties were alike estopped to set up such defense, the clerk having actually received the money. *County of Cheboygan* v. *Erratt,* 110 Mich. 156, 67 N. W. 1117, is strongly in point. It was there held that sureties upon an official bond of a county treasurer conditioned for the payment over of all moneys coming into his hands as treasurer were liable for the defalcation of moneys borrowed for the county by authority of the board of supervisors, even though the board exceeded its power in authorizing the loan. The court used the following language: "We think it altogether clear that, when it is shown that moneys have actually come into the hands of the treasurer as treasurer, neither he nor his bondsmen can avoid liability by showing either that irregularities exist in the proceedings by which such moneys were collected, or that there was no authority to enter into the agreement which resulted in the receipt of the money by the county. It is enough to impose upon the treasurer an active duty that the county *has* received the money, and the obligation on the bond exists when the money finds its way into his hands as treasurer." See, also, *County Treasurer* v. *Bunbury,* 45 Mich. 79, 7 N. W. 704.

The case of *Wilson* v. *Town of Monticello,* 85 Ind. 10, was an action on a bond given by Wilson, as the agent of the town, to negotiate certain bonds issued by the town for the purpose of retiring outstanding bonds. The sureties defended upon the ground that the town had no authority to issue the bonds placed in Wilson's hands. He converted the proceeds of the bonds to his own use. In deciding the point raised by the defense, the court said: "We think the sureties are not in a situation to question the authority of the town to issue the bonds placed in Wilson's hands as its agent under his agreement to use them in payment of its outstanding indebtedness. It is a familiar doctrine that an agent who receives money on account of his principal can not escape an accounting upon the ground that his principal had no right to engage in the transaction which yielded the money. There are many cases extending this rule to sureties, upon the ground that when the principal is bound so also is the surety." Citing *City of Indianapolis* v. *Skeen,* 17 Ind. 628. Other authorities in harmony with the above might be cited but we do not deem it necessary.

In this case Hogue became custodian of the school funds of the city of West Indianapolis by virtue of his having been elected treasurer of the school board and having given the bond required by statute. His sureties voluntarily contracted to account for all moneys that might come into his hands by "virtue of his office." This is an express condition of the bond, and the sureties cannot escape from its strict letter, and the spirit of the statute. Let it be conceded that the proceedings by which the $1,500 was donated by the civil city to the school city were irregular, and that the former had no right thus to pay out its funds in that manner, yet said sum was paid to the school city for a legitimate and laudable purpose, and Hogue actually received it by virtue of his office. We do not know of any

principle of law or equity that will discharge the sureties under such facts.

It is provided by statute that "the sureties in any official bond * * * shall, as between such sureties and the State, be deemed and taken to be principals; and it shall not be competent for any surety in such bond to set up, as a defense to an action brought for a breach of the condition thereof, any matter which would not be available as a defense to the principal in such bond." §7549 Burns 1901. Referring to this section of the statute the Supreme Court, in *Middleton* v. *State,* 120 Ind. 166, said: "The sureties could make no defense the principal could not make." Hogue could not successfully defend in an action against him for the conversion of $1,500 or any part thereof, on the ground that he and the other members of the school board did not execute an additional bond for the faithful application of said money, nor upon the further ground that the civil city of West Indianapolis, under the facts shown, had no right to donate the money to the school board, etc. It follows, from the statute and the case cited, that the sureties can not escape liability upon such grounds.

Under the motion for a new trial it is urged that the trial court erred in admitting certain evidence. We have carefully examined the question thus raised, and are of the opinion that the court, in admitting such evidence, did not commit any reversible error. Judgment affirmed.