COUNTY OF CHEBOYGAN *v.* ERRATT.

1. TRIAL—OFFICIAL BOND—INSTRUCTIONS.

In an action on a county treasurer's bond given upon his re-election to office, it was contended by the defense that a part of the shortage was created during the prior term of office, and that there was no evidence tending to show that the treasurer, at the expiration of his first term, had on hand the amount of money with which he was chargeable. While it appeared from the testimony of the deputy treasurer that, at the beginning of the second term, there was on hand in the usual depositories only $238 of the $2,500 with which the treasurer was then chargeable, it further appeared from the office books that, during the first two months of the second term, the disbursements exceeded the receipts by over $3,000. The court left to the jury the question whether any part of the defalcation occurred during the first term, and instructed them that, if it did, there could be no recovery on account of such prior defalcation. *Held,* that the charge was sufficiently favorable to the defendants.

2. COUNTY TREASURER'S BOND—BORROWED MONEY—AUTHORITY OF BOARD OF SUPERVISORS—LIABILITY OF SURETIES.

Sureties on the official bond of a county treasurer, conditioned for the payment over of all moneys coming into his hands as treasurer, are liable for the defalcation of moneys borrowed for the county by authority of the board of supervisors, even though the board exceeded its power in authorizing the loan.

3. SAME—MONEY BORROWED WITHOUT AUTHORITY.
  Whether the sureties would be liable for money borrowed
    without the concurrence of the board of supervisors,—*quære*.

  Error to Cheboygan; Adams, J.   Submitted June 12,
1896.   Decided July 8, 1896.

  *Assumpsit* by the county of Cheboygan against Wil-
liam Erratt and others on a county treasurer's bond.
From a judgment for plaintiff, defendants bring error.
Affirmed.

  *Frost & Sprague* (*Watts S. Humphrey*, of counsel);
for appellants.

  *George W. Bell*, for appellee.

  MONTGOMERY, J.  This is an action on the official bond
of the defendant William Erratt, given on his re-election
to the office of county treasurer, and approved and filed
on the 4th day of January, 1893.  A verdict was ren-
dered by a jury in favor of the county in the sum of
$11,014.66.  Judgment was entered on this verdict, and
defendants bring error.

  1. It is contended that the verdict is based upon the
books kept in the treasurer's office, and that, in order to
find the balance in favor of the county which the jury
did, it was necessary to find that the treasurer had on
hand at the beginning of his second term $2,585.75.  The
declaration avers that he entered upon his second term
on the 4th day of January, 1893, and the books show the
balance of $3,873.68 [1] on hand January 1st, but do not
show the amount on hand January 4th, when the second
term commenced.  The circuit judge left it to the jury
to find whether there had been a defalcation prior to
January 4, 1893, and instructed the jury that, if there
had been, there could be no recovery on account of said
defalcation.  Defendants' counsel contend that there was

  [1] It was admitted that an item of $1,287.93 had been erroneously
charged to the treasurer upon his books.

no evidence tending to show that this money was on hand January 4th. The testimony of the deputy county treasurer does tend to show that there was on hand, in the usual depositories, January 1, 1893, only about $238.19, but he was, of course, unable to state how much the treasurer himself may have had; and what is much more decisive is that, according to the books of the treasurer's office, there was received during January and February, 1893, $4,468.08, and disbursed during the same period $7,772.90. So that, if there had been a defalcation during the first term, this tends to show that it was made good before March 1st, and that money of the county to the amount claimed by the plaintiff was afterwards embezzled. In view of this testimony, the charge of the court, leaving to the jury the question whether any portion of this defalcation occurred through a misappropriation of money during the treasurer's first term, was sufficiently favorable to defendants.

2. During the second term of the treasurer, temporary loans were made under a resolution of the board of supervisors authorizing the chairman, clerk, and treasurer to borrow such sums as were needed from time to time. The amount of these loans aggregated, during the second term, $14,500. It is contended that these loans were illegal, and that the sureties on the bond entered into no obligation to be responsible for money coming into William Erratt's hands contrary to law. The condition of the bond is:

" The condition of the above obligation is such that, if the said above-bounden William Erratt, and his deputy, and all persons employed in his office, shall faithfully and properly execute their respective duties and trusts, and that such treasurer shall pay according to law all moneys which shall come to his hands as treasurer, and will render a just and true account thereof whenever required by the board of supervisors or by any provisions of law, and that he will deliver over to his successor in office, or to any other person authorized by law to receive the same, all moneys, books, papers, and other things apper-

taining or belonging to said office, then the above obliga-
tion to be void; otherwise, to be and remain in full force."

Can it be said that, because the board of supervisors
exceeded its power in authorizing the borrowing of this
money, the money did not come into the hands of defend-
ant Erratt as treasurer? We think not. In *Berrien
County Treasurer* v. *Bunbury*, 45 Mich. 79, the action
was on the official bond of Bunbury as treasurer of the
city of Niles. It was contended that the tax rolls of
the Second and Third wards were invalid for want of
a warrant, and that, as to the money collected on such
rolls, the sureties were not liable. The court said:

"The suit is not founded on any default in making col-
lection. Neither is it an action against delinquent tax-
payers. Its object is to recover from the officer and his
sureties, for the benefit of the State and county, the very
money which he, as treasurer, actually received for them,
and wholly fails and refuses to account for and pay over.
The money went into his hands. He received it in pay-
ment of taxes and as money belonging to the public.
Whose money is it? * * * It was not his when it
was paid and received, and has not become his since. It
belongs to the State and county. * * * Whether it
went into Bunbury's keeping by the right hand or the
left, on papers regular or irregular, with or without a
warrant, makes no difference. Its ownership in equity
and his legal responsibility were the same."

In the present case, as in Bunbury's, the owners of the
money were ready to part with it to the county on the
security given. Whatever the nature of the obligation
incurred by the county, the money became the money of
the county, and was received by the treasurer as such,
and received into the treasury of the county. It came
into his hands as treasurer. As was said by Mr. Justice
COOLEY in *Marquette Co.* v. *Ward*, 50 Mich. 177, speak-
ing of a bond of like condition:

"In its terms it could not well be more general.
Moneys received officially from any source whatsoever
are apparently within them."

A case in all substantial respects precisely like the present was *Boehmer* v. *County of Schuylkill*, 46 Pa. St. 452, which was an action on a county treasurer's bond conditioned to render a just account of all moneys which might come into his hands on behalf of the county. During the term of office of the county treasurer, the county commissioners had made loans aggregating $53,-078, and it was contended that these loans were unauthorized. It was also contended there, as it is in the present case, that it was not contemplated that money which was received on an unauthorized loan would come into the hands of the treasurer, and that the sureties were not bound. This contention did not prevail. The court said—

"No matter whether they [the commissioners] have or have not legal authority to borrow money by issuing scrip or any other form of security, if they do it, and bring the money into the county treasury, the treasurer is bound to keep it, and disburse it according to law, and, if he fails in this duty, his sureties are liable on the official bond."

See, also, *Wylie* v. *Gallagher*, 46 Pa. St. 205; 2 Brandt, Sur. § 522; 24 Am. & Eng. Enc. Law, 893; Mechem, Pub. Off. § 295; *Wilson* v. *Town of Monticello*, 85 Ind. 10.

We think it altogether clear that, when it is shown that moneys have actually come into the hands of the treasurer as treasurer, neither he nor his bondsmen can avoid liability by showing either that irregularities exist in the proceedings by which such moneys were collected, or that there was no authority to enter into the agreement which resulted in the receipt of the money by the county. It is enough to impose upon the treasurer an active duty that the county *has* received the money, and the obligation on the bond exists when the money finds its way into his hands as treasurer. Had the treasurer, on his own motion, and without the concurrence of the supervisors, attempted to borrow money, as in *Leigh* v. *Tay-*

*lor,* 7 Barn. & C. 491, a different question would be presented, upon which we express no opinion.

We find no error in the proceedings, and the judgment will be affirmed.

LONG, C. J., HOOKER and MOORE, JJ., concurred. GRANT, J., did not sit.