MARYLAND CASUALTY CO. v. PACIFIC COUNTY et al.

(Circuit Court of Appeals, Ninth Circuit. October 1, 1917.)

No. 2947.

1. DEPOSITARIES ⬅14—BONDS—ACTIONS.
   In an action on a bond executed by defendant to secure a deposit of county funds, evidence *held* to show that the bond was not approved by county officials until after the bank in which it was contemplated funds should be deposited had failed.

2. DEPOSITARIES ⬅7—BONDS—"OFFICIAL BOND."
   A bond given by a bank to secure funds of a county of the state of Washington deposited therein is an "official bond," and falls within the principle of Rem. & Bal. Code Wash. § 8327, declaring that errors of form in an official bond shall be disregarded; and where it has in fact been acted upon to that extent, the fact that it has not been properly approved or filed as required by law constitutes no defense.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Official Bond.]

3. DEPOSITARIES ⬅7—BONDS—APPROVAL.
   The treasurer of a county of the state of Washington cannot alone accept for the benefit of the county a bond tendered by a bank designated as a depositary of the county funds, but can at most mark the bond approved; concurrence of other officers being necessary to acceptance.

4. DEPOSITARIES ⬅7—BONDS—ACCEPTANCE.
   A bank designated as county depositary tendered a bond, conditioned that the bank should keep all sums deposited and keep the county treasurer harmless and indemnified for and by reason of the deposits. The bond was delivered to the treasurer on July 12th by the bank, in which funds to a considerable extent had already been deposited. The prosecuting attorney declined to approve the bond on account of a pro rata clause, and

the county treasurer so notified the surety. The bank closed its doors on Saturday, July 17th, and on the following Monday the bond indorsed by the treasurer and the prosecuting attorney was tendered for filing. The treasurer, in the interim between July 12th and July 17th, increased the amount of the deposits in the bank, though all the bonds, including the one involved, given by the bank, did not then equal the amount of the deposits. *Held* that, as the treasurer did not alone have authority to approve the bond, and as the amount of deposits in the bank at the time the bond was tendered exceeded the aggregate amount of the several bonds, the surety is not liable, on the theory that the bond must be treated as having been acted upon by the treasurer, because of the presumption that a public officer acts lawfully, and that without the bond the treasurer was not authorized to make such deposits.

5. DEPOSITARIES ⬳7—BONDS—CONSTRUCTION.

In such case, the bond, though its terminology was ambiguous, extended the obligation of the surety to moneys presently ˙on deposit, as well as moneys to be deposited.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by Pacific County, a municipal corporation, and another, against the Maryland Casualty Company, a corporation of the state of Maryland. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

John W. Roberts, of Seattle, Wash. (Roberts, Wilson & Skeel, of Seattle, Wash., of counsel), for plaintiff in error.

Charles O. Bates and Charles T. Peterson, both of Tacoma, Wash., and John I. O'Phelan, of Raymond, Wash., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH, District Judge.

DIETRICH, District Judge. Pacific county, in the state of Washington, and J. L. Glazebrook, its treasurer, brought suit upon the bond of the Maryland Casualty Company, and after a trial without a jury recovered judgment in the sum of $9,281.32, together with costs. The Casualty Company, hereinafter referred to as the defendant, brings the case here for review. Omitting immaterial parts, the bond is as follows:

"Know all men by these presents, that First International Bank of South Bend, Washington, as principal, and Maryland Casualty Company, a corporation of the state of Maryland, as surety, are firmly held and bound unto J. L. Glazebrook, treasurer of the county of Pacific, state of Washington, in the sum of ten thousand dollars ($10,000). * * *

"Dated this 9th day of July, A. D. 1915.

"Whereas, the said principal, First International Bank, has been designated by J. L. Glazebrook, treasurer of Pacific county, as a depositary of the current funds in the hands or possession of the said treasurer, J. L. Glazebrook, to be deposited in the said bank, the amount whereof shall be subject to withdrawal or diminution by said treasurer, as the requirements of said county shall demand, and which amount may be increased or decreased as the said treasurer may determine; and

"Whereas, the said bank, in consideration of such deposit and of the privilege of keeping same, has agreed to pay the county of Pacific, state of Washington, interest," etc. * * *

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Now, therefore, if the said First International Bank shall * * * well and truly keep all such sums of money so deposited, or to be deposited, as aforesaid, and the interest thereon, * * * and shall in all respect save and keep the said county, and the county treasurer of the said county, harmless and indemnified for and by reason of the making of said deposit or deposits, and shall in all respects comply with House Bill No. 90, * * * then this obligation shall be void and of no effect; otherwise to be and remain in full force and effect.

"Provided:

"1. That the Maryland Casualty Company surety on said bond, shall have the right to terminate its liability under this obligation by serving notice," etc. * * *

"2. The surety shall only be liable for such proportion of the total loss or damage sustained by said obligee, by reason of any default of the principal embraced within the terms of this bond, as the penalty of this bond shall bear to the total sum of all bonds and securities which may be given to secure the deposits above referred to; and in no event shall the surety hereunder be liable for any sum in excess of the penalty of this bond."

It was delivered by the defendant's agent to the First International Bank, and by the cashier of the bank handed to the county treasurer, on July 12, 1915. Under the state law, referred to in the bond as House Bill No. 90, before the designation of a bank as a depositary becomes effective, and before the treasurer is authorized to deposit in such bank any public funds, the bank must file with the county clerk a surety bond in favor of the treasurer, "in the maximum amount of deposits designated by such treasurer to be carried in such bank"; and the bond must be approved by the treasurer, prosecuting attorney, and chairman of the board of county commissioners, or at least two of such officers, "before being filed with the county clerk, and unless so approved the same shall not be received or filed by the county clerk." · The bond in question was not filed with the county clerk until July 19, 1915. The bank had been designated as a depositary in the preceding January, and upon July 12th there was on deposit of the public funds of the county a balance of $48,429.24, to secure which the bank had furnished surety bonds, on file with the county clerk, aggregating $36,000 (exclusive of the bond in question and the bond of the Illinois Surety Company for $10,000, which by its terms. had expired on July 1st), besides collateral in the form of municipal warrants and bonds aggregating approximately $10,500, which it had placed in the hands of the county treasurer. Our attention has not been directed to any provision of law authorizing the treasurer to make deposits upon collateral security of any character; but, if these bonds and warrants be considered at their face value, which was in excess of their market value, the security to cover deposits in this bank aggregated $46,500, as against an actual deposit balance of nearly $3,000 in excess of that amount. On July 13th the treasurer made an additional deposit of $4,000, and on the following day he made another deposit of $4,000, and at the same time checked out $4,000. The bank remained open Saturday, July 17th, as usual, but failed to open Monday, or subsequently, and its affairs are now in the course of liquidation. The treasurer had no other transactions with it between July 12th and July 19th, and, as already indicated, there was due him when the bank failed a balance of $52,429.24. The lower court' excluded the bond of the

Illinois Surety Company, included the collateral at its face value, and held that the defendant's bond was in force and covered all deposits, both those made before and those made after it was put into the hands of the treasurer.

The defendant urges two general contentions: First, that the bond was not delivered to or accepted by the county until after the bank failed; and, second, that it was not intended to cover existing deposits, but was given to secure only deposits to be thereafter made.

[1] Upon the first point, some of the material facts are undisputed, while others are in controversy. It is admitted that the bond was not tendered to the county clerk until July 19th. It is further conceded that of date July 14th the treasurer wrote to the defendant the following letter:

"In re Bond of First International Bank.

"We have your depository bond for $10,000, dated July 9th, 1915, in favor of J. L. Glazebrook, county treasurer. The prosecuting attorney refuses to approve any bond carrying the pro rata clause, and we ask you to kindly give us a bond in which this item is eliminated, or followed by the following: 'Provided, however, that if such other bonds or securities are insufficient for any reason to fully make, together with the aforesaid proposition under this bond, the full amount of interest and principal demanded and refused and interest thereafter accruing to time of actual payment to said treasurer, then and in that event the surety hereunder shall be liable to said treasurer to the full amount of loss sustained by reason of such insufficiency.' If you will deliver to your agent here a bond as stated above, we will deliver the bond we now have to him, and take the new bond in lieu thereof. If you prefer, we promise to return to you immediately the old bond above mentioned as of July 9th upon receipt of new bond corrected to read as stated above. Thanking you for your kindness in the above matter, we are," etc.

There is no positive evidence as to when the letter was mailed, but the testimony strongly tends to show that it was actually received by the defendant at Seattle on July 19th. When the bond was tendered for filing upon the 19th of July, it bore the signatures of the treasurer and the prosecuting attorney, but without date. Notwithstanding the statements in this letter, the treasurer testified that the signatures were indorsed on July 12th; but the prosecuting attorney declined to say when he made the indorsement, although it would seem quite incredible that he should have forgotten. However, he admitted that, when the bond was presented for his approval, he declined to approve it, for the reasons stated in the treasurer's letter. When we consider the statement in the letter, the corroboration thereof by the prosecuting attorney under oath, his evasion of the question when he indorsed his name, the fact that the indorsement is without date, and the further fact that the bond was not tendered for filing until after the bank failed, the conclusion is irresistible that the prosecuting attorney did not give his approval or attach his name until after the bank failed, notwithstanding the bare, uncorroborated testimony of the treasurer to the contrary. It must be borne in mind that as a witness the treasurer had the strongest inducement to color the truth. Admittedly, as between him and the county, he and his official bonds must stand responsible for the $8,000 deposited on the 13th and 14th. If he can succeed in this action, he will escape the consequences of offi-

cial malfeasance of the most flagrant character. For reasons which may readily be surmised, the county is joined with him in this suit; but, in a suit by the county upon his official bond, the right to recover would be so clear as apparently to leave no possible ground for defense.

[2-4] But if we take the view that the considerations referred to are all outweighed by the uncorroborated testimony of this deeply interested witness, what legal aspect does the case present? Plaintiffs place great, if not exclusive, reliance upon the assumption that the bond was accepted and acted upon by the treasurer. Of course, it was not accepted by the county, for the only officer authorized to accept it for the county knew nothing about it until July 19th. But was it acted upon by the treasurer? We are in entire accord with the principle enunciated in section 8327 of the statutes of the state of Washington (Rem. & Bal. Code), and recognized in such cases as Board v. Duluth, 75 Minn. 174, 77 N. W. 815, State v. Pederson, 135 Wis. 31, 114 N. W. 828, Henry County v. Salmon, 201 Mo. 136, 100 S. W. 20, People v. Edwards, 9 Cal. 286, Deer Lodge Co. v. U. S. F. & G. Co., 42 Mont. 315, 112 Pac. 1060, Ann. Cas. 1912A, 1010, Buhrer v. Baldwin, 137 Mich. 263, 100 N. W. 469, Hennepin County v. State Bank, 64 Minn. 180, 66 N. W. 143, and Ihrig v. Scott, 5 Wash. 584, 32 Pac. 466. Accordingly we hold that such a bond as this is in effect an official bond, and falls within the rule that defects of form should be disregarded; and where the bond has in fact been acted upon, to that extent it will constitute no defense that it has not been properly approved or filed as required by law. But there must be an acceptance of the bond, and the acceptance can be accomplished only by a substantial compliance with the forms prescribed by law, or by official acts done in reliance upon the existence of such bond. Here, before the bank was entitled to receive deposits, it was its duty—not the duty of the treasurer—to file with the county clerk a surety bond approved by at least two out of the three designated county officers. The statute undoubtedly contemplates delivery to and acceptance by the clerk on behalf of the county. The bank presents the bond to the treasurer and one of the other officers, or to the two other officers, for their approval; but the treasurer cannot accept the bond for the county any more than could the prosecuting attorney or the chairman of the board of county commissioners. The limit of the treasurer's power, whether he acts alone or in conjunction with one of the other officers, is to "approve" the bond—its form, its execution, and the sufficiency of the surety. But such approval does not ipso facto consummate a delivery to or constitute an acceptance by the county. In the ordinary course the bank might with perfect propriety alter its purpose, after securing the requisite approval, and decline to deliver the bond to the clerk; no one would contend that in such a case the bond would be effective. So here it would have been competent for the bank or the defendant to withdraw the bond at any time prior to its delivery to the clerk on July 19th, provided the county or the treasurer had not in the meantime acted in reliance upon it. Defendant received no premium, and was not in a position to

make a demand therefor until its proffered obligation was accepted. It being admitted that the bond was not delivered to or accepted by the county substantially in the manner prescribed by law, and that no officer of the county acted in reliance upon it, unless it be the treasurer, the only question is: Did the treasurer so act? There is no suggestion from any source that, relying on the bond, he left in the bank any part of the balance of approximately $45,000 on deposit on July 12th, and for which the defendant was held responsible in the court below. Nor is there any substantial evidence that he relied upon it in making the deposits on July 13th and 14th. Upon being asked the direct question by defendant, he objected to answering, and his objection was sustained. In the face of this declination to say whether he would or would not have made the deposits without this bond, he attempts to support the contention that he relied upon it by invoking the presumption that a public officer acts lawfully, and that therefore he would not have made these deposits without the bond. But, even if we put on one side the consideration that it is positively shown that, contrary to such presumption, he was in this very matter violating the law by making deposits upon collateral of doubtful value, when the law requires surety bonds, and further by carrying a balance substantially in excess of securities of all descriptions, does not the presumption operate directly against, rather than in support of, his position? For him to have deposited a single dollar in reliance upon this bond before it was delivered to and accepted and filed by the clerk would, as he well knew, have been to fly in the face of an express statutory prohibition, of which he admits he was cognizant.

It is suggested in the defendant's brief, and not discussed by the plaintiffs, that under the state law he might, upon his own responsibility, have deposited public funds in the bank without requiring the statutory security; if that be a correct view, of course the presumption would be that he made the deposits upon his own responsibility and without security. But if the law be otherwise, surely to sustain the position that he did not violate one branch of a law we cannot indulge the presumption that he violated another of its express provisions. If he had had no previous transactions with the bank, or if such transactions as he was having had been in compliance with the law, and if he could have lawfully made deposits upon this bond without first filing it with the clerk, there would be room for the presumption; but it would be a strange use of the principle, if it could be invoked in favor of the plaintiff under the circumstances here shown to have existed. There is a suggestion that the letter does not express a present rejection of the bond, but implies a conditional or temporary acceptance. It may be conceded that the language is equivocal on several points. But it is to be repeated that it was not within the power of the treasurer to accept, temporarily or otherwise. He could give or withhold his approval, and that is all; and neither would his approval in itself be effective for any purpose, nor would his disapproval be final or conclusive. Besides, it is plain from his own testimony that he did not regard the bond as having been delivered to or accepted by the county. He says:

"I did not file the bond with the clerk, because the company had not sent me bond carrying the clause outlined. If I had filed it, and the company sent me the bond carrying the clause outlined, it took an order of court to take this one (indicating the bond sued on). It required a cancellation notice of 90 days, and in that event I would have held two bonds against the company for $10,000 each."

We must hold that the record fails to disclose an acceptance, either in the manner prescribed by statute or by conduct showing that any officer of the county assumed that the bond was in force and acted in reliance thereon.

[5] It is unnecessary to discuss the other point at length. While the language of the bond is ambiguous, we construe it as extending the obligation of defendant to moneys presently on deposit as well as to moneys to be deposited. Whether it created any liability touching an existing claim upon which the bank was already in default, or for past deposits in case it should appear that the bank was insolvent when the bond was given, we need not now decide. Nor do we express any opinion upon the question whether or not the bond of the Illinois Surety Company should be considered in determining the aggregate amount of securities, especially as to such previous deposits, if any, as the bank was unable to account for and pay to the county on July 1st.

The judgment is reversed, with directions to grant a new trial, and to take further proceedings not out of harmony with the views herein expressed. Costs to appellant.

---
☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes