COUNTY OF OSCEOLA *v.* MICHIGAN SURETY CO.

1. COUNTIES—DEPOSITORY BOND—CANCELLATION—NOTICE TO COUNTY OFFICERS INEFFECTIVE.

Surety company's attempt to cancel depository bond protecting county's deposit in bank, by giving notice thereof to county clerk and county treasurer and delivering to them new bond for less amount, was not effective, in absence of action thereon by board of supervisors.

2. EVIDENCE—COUNTIES—DEPOSITORY BONDS.

Where, in action by county against surety company on depository bond, defendant in its answer gave notice that at time bank closed it had given county other depository bonds and that defendant's liability was limited thereby, and its counsel had cross-examined county clerk relative thereto, testimony by him showing that said bonds had not been approved and reasons therefore was admissible.

3. BILLS AND NOTES—CHECKS—PRESENTMENT—BANKS AND BANK-ING.

As between drawer and person to whom check is made payable, failure of latter to present it for payment within reasonable time discharges former from liability.

4. COUNTIES—LIABILITY OF SURETY ON DEPOSITORY BOND FOR MONEYS REPRESENTED BY UNPAID CHECKS.

That county had drawn checks against its deposit in bank, which had not been presented or paid when bank closed, did not relieve surety on depository bond from liability therefor, notwithstanding payees had reasonable time in which to present them before bank closed.

5. SAME—MONEYS IN CUSTODY OF COUNTY BELONGING TO OTHERS PROTECTED BY DEPOSITORY BOND.

Moneys received by county treasurer by virtue of his office, and deposited by him in bank designated as depository of county funds, were protected by depository bond, although, strictly speaking, they were not moneys belonging to county.

MCDONALD, C. J., and POTTER, J., dissenting.

Appeal from Osceola; Cutler (Hal L.), J. Submitted November 2, 1932. (Docket No. 125, Calendar No. 36,673.) Decided June 29, 1933.

Assumpsit by County of Osceola, a municipal corporation, against Michigan Surety Company, a Michigan corporation, on a depository surety bond. Judgment for plaintiff. Defendant appeals. Affirmed.

*A. W. Penny* and *W. F. Umphrey,* for plaintiff.

*Shields, Silsbee, Ballard & Jennings (David R. Bishop,* of counsel), for defendant.

*Paul W. Voorhies,* Attorney General, *Hugh E. Lillie,* Assistant Attorney General, *Butzel, Levin & Winston, Kerr, Lacey & Scroggie,* and *Hayden, Hubbard & Rathbun, amici curiæ.*

Potter, J. (*dissenting*). Plaintiff sued defendant to recover upon a bond executed by it as surety for the First National Bank of Reed City to plaintiff given December 28, 1928, to be in force from January 1, 1929, to January 1, 1930; subsequently renewed for 1930 and 1931 in accordance with the terms of the bond. From a judgment for plaintiff, defendant appeals. Plaintiff's declaration is on the contract of suretyship and the common counts. The defendant admits the bond was in force for the years 1929 and 1930 and for 1931 up to the time it alleges it canceled the bond. The bond contained a provision:

"This bond shall be deemed canceled at the close of business upon the effective date set forth in a written notice served by the surety upon the obligee or by the obligee upon the surety, or sent by registered mail. Such date shall, in case of cancellation by the surety, be not less than five days from such service, or if sent by registered mail, not less than 10 days from the date by the sender's registry receipt. In case of cancellation the unearned premium, if any, shall be returned upon demand."

Under date of September 16th, defendant served upon the county clerk of defendant county a notice of cancellation as follows:

"September 16, 1931
"Copy for the information of
"First National Bank,
"Reed City, Michigan.
"Mr. Alf Zimmerman,
"County Treasurer,
"Reed City, Michigan.
"Dear Sir:

"Notice is hereby given that the Michigan Surety Company has elected to and does hereby cancel and terminate and withdraw from liability as surety under its bond No. 14,607, dated December 28, 1928, and effective January 1, 1929, in the sum of $20,000 on behalf of the First National Bank of Reed City, Michigan, and all continuances or renewals of said bond, which said bond was in favor of the county of Osceola and was given for the protection of funds of the county deposited in said bank.

"This cancellation and termination and withdrawal is effective five days from the date of the service of this notice upon you and is pursuant to provision therefor contained in the seventh paragraph of said bond, lines 45 to 50 inclusive.

"This cancellation is for the purpose of effecting reduction in the amount of suretyship and so that substitute bonds may be executed and filed. Concurrently herewith there is submitted a new bond on behalf of the First National Bank of Reed City in the sum of $10,000, which is intended to supersede and replace the present bond of $20,000, which is canceled by the above notice. This new bond of $10,000 is effective September 23d and is properly signed and sealed by the bank and surety. Cancellation of the $20,000 bond will become effective at midnight September 22d, and the new bond for $10,000 will immediately thereupon become operative and effective. Thereafter appropriate adjustment of premium will be made.

"The First National Bank is a depository for a number of school districts in the vicinity of Reed

City, and the statutes require the school districts' depositories furnish security to said districts. At the present time depository bonds are difficult of procurement and the bank wishes to reduce the bond covering county funds from $20,000 to $10,000 so as to make it possible for us to execute these several depository bonds to various school districts, for which it is depository. This, then, is the particular reason for the reduction in bond covering county funds. Immediately following the 23d instant, we will execute and forward to the bank the several bonds covering school districts' funds. We make this explanation so that the cancellation and substitution of reduced bond will not be misconstrued.

"This notice is served upon you by messenger and we ask that you favor us with an acknowledgment of its receipt by signing the inclosed copy.

"Very truly yours,

"MICHIGAN SURETY COMPANY

"WHL.WH    (Signed)    By WALTER H. LEWIS

"Vice-president

"Receipt of the above and foregoing cancellation notice is acknowledged this 17th day of September, 1931.

(Signed)    "ALF ZIMMERMAN,

"County Treasurer."

This notice is a notice defendant has elected to cancel the bond; that it does cancel it; that it terminates and withdraws from liability as surety thereon; that the cancellation and termination is effective five days from the date of service of this notice. The date of service was acknowledged to be September 17, 1931. A bond for $10,000 was tendered by the surety company in the place of the canceled bond. This $10,000 bond was not accepted. The bank closed October 2, 1931. The cancellation was in accordance with the terms of the bond.

The question is whether defendant is liable as surety on this bond. Prior to the execution of the bond, the First National Bank of Reed City had been regularly designated by the board of supervisors of Osceola county as a depository for county funds. The bond was furnished by the First National Bank of Reed City in pursuance of. such designation and was accepted and approved by the board of supervisors of the county. The real question is, Is the cancellation clause of the bond above quoted valid? Plaintiff contends it is invalid; defendant that it is valid. In 1909 the legislature provided banks might compete for the deposit of county money. The bank or banks bidding the highest rate of interest to the county were to be awarded by being designated as county depositories. They were to give bonds to indemnify the county. Thereupon it was made the duty of the county treasurer to deposit the money which came into his hands as such, with some exceptions, in such designated depository or depositories; the statute providing, if he did so, the county treasurer, in the absence of his own negligence, should not be liable in case the depository suspended payment. What kind of a bond was to be given to the county by such designated depositories?

Such bond—

a. was to be executed and delivered to the board of supervisors of the county;

b. in an amount at least equal to the maximum amount to be deposited in such bank;

c. with such sureties as should be approved by the board of supervisors and the prosecuting attorney of the county;

d. conditioned for the safekeeping and repayment of such moneys or any part thereof on demand and the payment of interest.

e. Such bond, "shall contain such other conditions as may be required by the board of supervisors * * * not inconsistent with the provisions of this act." 1 Comp. Laws 1929, § 1195.

It is, by statute, made the duty of the board of supervisors "to fix and determine the amount and kind of said bond and the class and character of the surety executing same." 1 Comp. Laws 1929, § 1194.

The board of supervisors may require new and additional bonds of security from the designated depository or depositories. 1 Comp. Laws 1929, § 1197. The board of supervisors may direct the county treasurer to withdraw county funds from any designated depository whenever it shall deem it unsafe to continue said deposits with any such bank or banks. 1 Comp. Laws 1929, § 1198. The statute provides for the release of sureties on depository bonds. 3 Comp. Laws 1929, § 12420. If the surety on a depository bond may be released by law, they may be released by agreement between the parties. The provision in the bond in question providing for the release of the surety thereon from liability must be construed as one approved by the board of supervisors and under 1 Comp. Laws 1929, § 1195, and valid in accordance with its terms.

The board of supervisors doubtless read the conditions, stipulations, and limitations in the bond in question, accepted and approved the bond containing them, and the county must be held to be as much bound by the contract entered into as the surety company. *Mayor and Council of Brunswick* v. *Harvey,* 114 Ga. 733 (40 S. E. 754). Suit in this case is not brought entirely upon the original bond. It is brought upon the original bond as renewed for 1930 and 1931. Such renewal is a new and distinct con-

tract, keeping the original bond in force by reference and incorporation in the renewal agreement. 1 May on Insurance (4th Ed.), § 70a; Ostrander on Fire Insurance (2d Ed.), § 344; Richards on Insurance (2d Ed.), § 156; 4 Joyce on Insurance (1st Ed.), § 3485; *Mayor and Council of Brunswick* v. *Harvey, supra.* The terms and conditions of the bond in question, ratified and approved by the board of supervisors, including the clause providing for its cancellation, is such a bond as the county, through its board of supervisors, was authorized to take; the parties are bound thereby; the cancellation was regularly made. Upon the cancellation being made the board of supervisors did not direct the withdrawal of the county funds from the designated depository, and defendant is not liable.

It is suggested defendant should have tendered back the unearned premium upon giving notice of cancellation of the bond, which provided in case of cancellation for a return of the unearned premium on demand. Notice of cancellation was given in accordance with the provisions of the bond. A different bond was tendered. Defendant said if it was accepted appropriate adjustment of the premium would be made. The notice of cancellation was good without an actual tender to plaintiff or the bank of the unearned premium (*Home Ins. Co.* v. *Curtis,* 32 Mich. 402; *Metropolitan Life Ins. Co.* v. *Freedman,* 159 Mich. 114 [32 L. R. A. (N. S.) 298]; *American Fidelity Co.* v. *R. L. Ginsburg Sons' Co.,* 187 Mich. 264; *Molyneaux* v. *Royal Exchange Assurance Co.,* 235 Mich. 678; *Beaumont* v. *Commercial Casualty Ins. Co.,* 245 Mich. 104), in accordance with the general rule in this country (3 Joyce on Insurance [2d Ed.], pp. 2557–2630), and in England (17 Halsbury's Laws of England, pp. 495–499).

"It is competent for the parties to stipulate that under certain conditions or the happening of some event, or the not happening of a specified contingency, a part of the premium shall be returned. Such stipulations may lawfully be, and should be, inserted in the policy, or otherwise made a part of the contract, and when so made are enforceable." 3 Joyce on Insurance (2d Ed.), p. 2561, § 1391.

Where the condition of the bond is substantially that required by the statute, the fact that it contains further undertakings does not take the bond out of the statute.

"It has been frequently held that, in the absence of a prescribed statutory form, and of a declaration that bonds not in accordance therewith shall be void, if a bond be taken under a statute, with a condition in part prescribed by statute, and in part not so prescribed, yet, if it be clearly divisible, a recovery may be had upon it for a breach of the part prescribed by statute. The superadded part may be rejected as surplusage." *Board of Education of Detroit* v. *Grant,* 107 Mich. 151.

The bond in question does not fall within the class of bonds under consideration in the case last above cited. Certain conditions of the bond are prescribed by statute. The form of the bond is not so prescribed, nor is there any declaration in the statute that bonds not in accordance with the statute shall be void. The statute prescribes certain conditions, and that the bond may contain other conditions required by the board of supervisors. That is, conditions which may be agreed upon between the surety and the board of supervisors.

"A statutory bond may be good as a common-law obligation, although insufficient under the statute because of noncompliance with its requirements, pro-

vided it is entered into voluntarily and on a valid consideration and does not violate public policy or contravene any statute. But this rule cannot be extended to cases in which to hold the parties liable as on a bond at common law would be to charge them with liabilities and obligations greater than, or different from, those which they assumed in the instrument executed by them." 9 C. J. p. 27.

The rule of the text above quoted has been repeatedly recognized and acted upon by this court. *St. Joseph County Supervisors* v. *Coffenbury,* 1 Mich. 355; *People, for use of Clinton,* v. *Laning,* 73 Mich. 284; *Lustfield* v. *Ball,* 103 Mich. 17; *Board of Education* v. *Grant, supra; Buhrer* v. *Baldwin,* 137 Mich. 263; 9 C. J. p. 27.

The parties to this bond, under any circumstances, are bound by the words of the instrument. If the words do not make the surety thereon liable, nothing else can. There is ordinarily no construction of an instrument which is plain in its terms. There is no equity against sureties. The bond is to be enforced in accordance with its words. This court has no power or authority to write into the bond terms and conditions not contained therein, and it has no power and authority to eliminate therefrom other conditions than those expressly named in the statute, which, by the terms of the statute itself, the board of supervisors and the surety may include therein. The surety in question is a paid surety. The general rule of construction is that a noncompensated surety is only to be held liable in accordance with the strict terms of the contract. Spencer on Suretyship, § 259; Arnold, Suretyship and Guaranty, § 232; Pingree, Suretyship and Guaranty (2d Ed.), § 442. A more liberal rule of construction applies to compensated sureties, but though the surety involved is a compensated surety, that does not authorize the

contract to be construed otherwise than in accordance with its terms agreed to by the surety in its execution of the bond and ratified and approved by the board of supervisors of the county. Whether we consider the bond in question as strictly a statutory bond, or as a common-law bond, defendant is not liable.

Judgment should be reversed, with costs.

McDonald, C. J., concurred with Potter, J.

Sharpe, J. In my opinion, the notice of cancellation, quoted in full by Mr. Justice Potter, was not intended to, and did not, terminate the obligation in defendant's bond at midnight on September 22d. Its purpose was thus stated:

"This cancellation is for the purpose of effecting reduction in the amount of suretyship and so that substitute bonds may be executed and filed. Concurrently herewith there is submitted a new bond on behalf of the First National Bank of Reed City in the sum of $10,000, which is intended to supersede and replace the present bond of $20,000, which is canceled by the above notice. This new bond of $10,000 is effective September 23d and is properly signed and sealed by the bank and surety."

It appears that a similar notice was delivered to the county clerk and receipt acknowledged by him.

A reading of the entire notice and a consideration of the testimony of the county clerk and county treasurer satisfies me that the vice-president who signed the notice and Charles C. Blair, the "special agent" who delivered it, understood at the time it was delivered that the county clerk or county treasurer, one or both, had the power to accept the cancellation and to accept and approve the new bond for $10,000 tendered with it. The notice was delivered in the

office of the county treasurer, and both he and the county clerk were then present.

Alf Zimmerman, the county treasurer, when asked about the delivery of the notice, testified:

"*Q.* When it was turned over to you, did you accept it?

"*A.* I told them I couldn't do it because I have no right. I told them it was a matter concerning the board of supervisors.

"*Q.* What did they say? What did the representative of the surety company say?

"*A.* The representative of the surety company said to me 'We ask you to keep it in your office, and to present it to the board,' something of that nature. I don't just exactly remember the exact words, but that was the meaning anyway.

"*Q.* To present it to the board of supervisors?

"*A.* Yes, sir.

"*Q.* Were the board of supervisors then in session?

"*A.* No, sir.

"*Q.* Were they in session from that time until after the time the bank closed its doors?

"*A.* No, sir."

He also testified that the $10,000 bond was delivered to him at the same time, and—

"*Q.* What did you say when this notice and bond was turned over to you,—the $10,000 bond?

"*A.* I told them I had no right to accept it, whatever.

"*Q.* Accept what?

"*A.* This bond of $10,000.

"*Q.* What else did you tell them here?

"*A.* Because it was not my duty; it was the duty of the board of supervisors to accept the bond and not mine.

"*Q.* So when he turned it over to you, you took the bond and notice, but told him you would not accept it?

"*A.* Yes, sir."

The county clerk, John F. Gardner, testified as to what occurred at that time:

"*Q.* When he turned this notice over to you, what did he say?

"*A.* He said, in effect, what it says in there,—that the bank—that they were carrying all of the bonding of the bank that they could, under the condition of the times, and that the bank wished them to carry some bonds for township treasurers in the various townships and in order to do that, they would have to reduce their bonds with us.

"*Q.* What did you say?

"*A.* I said it would be impossible, as he only had $20,000 bonds and we could hardly keep the deposits below that amount.

"*Q.* Was Mr. Zimmerman there at the time?

"*A.* Yes, sir.

"*Q.* What did he say?

"*A.* Well, I then said—in the second place, I wouldn't have any authority to accept that from you anyway, because it is a question for the board of supervisors, and that therefore I could not accept it as an acceptance of the notice.

"*Q.* The board of supervisors then in session?

"*A.* No; they were not.

"*Q.* When did they convene?

"*A.* I think the second Monday in October.

"*Q.* And that was the regular time, as provided by law?

"*A.* Yes, sir.

"*Q.* They convened at that session?

"*A.* Yes, sir.

"*Q.* And at that time?

"*A.* Yes, sir.

"*Q.* But had they been in session,—had the board of supervisors been in session from the time of this notice, on the 17th of September, up until the second Monday in October, 1931?

"*A.* They were not in session from the time they ended their June term until they came to their October term.

"*Q.* So you told him that, and what else did you say?

"*A.* Well, he said, of course we understand that, but we want you,—we have got to deliver it to you, and you can present it to the board of supervisors, and I said, on that basis I will receipt for it.

"*Q.* That is, that you would present it; present what?

"*A.* This cancellation notice.

"*Q.* This cancellation notice?

"*A.* Yes, sir."

Mr. Blair was questioned as to the statements made by him above referred to, and answered: "I don't remember of any such conversation."

In my opinion but one conclusion can fairly be drawn from this testimony and the language employed in the notice of cancellation. The defendant expected that the county officers would approve the $10,000 bond and that it would take the place of the one for $20,000. This is clearly indicated by the statement in the cancellation notice:

"Cancellation of the $20,000 bond will become effective at midnight September 22d, and the new bond for $10,000 will immediately thereupon become operative and effective. Thereafter appropriate adjustment of premium will be made."

And, when informed by the county officers that they could not accept the notice of cancellation, and that approval of the $10,000 bond must be had by the board of supervisors, Mr. Blair said, "We ask you

to keep it in your office, and to present it to the board.'' Surely he had no thought, nor had the clerk and treasurer, that after midnight on September 22d the county would be without protection by a depository bond. Had the county treasurer so understood, it would have been his duty to have withdrawn the moneys of the county in the bank or required other security therefor. Both he and the county clerk rested content upon their understanding that the *status quo* would be maintained until the board of supervisors would meet and pass upon the $10,000 bond or take such other action as they might be advised.

Entertaining this view, I do not deem it necessary to discuss or pass upon the contention of the plaintiff that the provision in the bond for cancellation is surplusage and unenforceable.

It appears that the bank had also given a depository bond of the United States Fidelity & Guaranty Company, which expired on January 31, 1931, and that the board of supervisors had requested the bank to furnish bonds to take its place. On April 16, 1931, the board adopted a report of the ways and means committee, which stated that they had consulted with the bank—

"with regard to securing a bond in the sum of $30,000 running to January 1, 1932, as a depository bond for the coverage of Osceola county deposits and when said bonds will be furnished and submitted to the prosecuting attorney for acceptance as soon as said bond can be procured."

Pursuant thereto, the bank executed a bond with Arthur Adamy as surety and another with Edward E. Bettin as surety, each in the sum of $15,000, and dated May 11, 1931, and delivered the same to the county treasurer. The county clerk testified that,

at a meeting of two of the officials of the bank and a committee of the board of supervisors and the prosecuting attorney, the matter of their approval was discussed, and that the prosecuting attorney declined to accept and approve them for the following reasons:

"First: Because of the fact they were not surety bonds, and thère was no authority in the records of the board of supervisors to accept anything but surety bonds;

"And second: He was not satisfied with one of the people that gave the bond,—Mr. Adamy;

"Third: He questioned the authority of the board of supervisors to delegate to him, as they had in their resolution, authority to accept for the board."

This testimony was admitted over the objection of defendant's counsel that it was "hearsay and self-serving testimony." The defendant in its answer gave notice that at the time the bank closed it had given the county other depository bonds aggregating $30,000 in amount, and that its liability was limited thereby, and its counsel had, before this testimony was admitted, cross-examined the county clerk relative to these bonds. There being no record evidence as to their presentation to the county officers, and the action taken thereon, this testimony was admissible to show that they had not been approved and the reasons therefor.

Counsel urge that action might have been brought on these bonds, and that the sureties would have been estopped from insisting on a lack of approval thereof. *People* v. *Johr,* 22 Mich. 460. Had the treasurer accepted them from the bank and filed them in his office, a different question would be presented. But the officer to whom the board of supervisors had directed that they should be submitted

for acceptance refused to approve them, and no binding obligations on the part of the sureties thereon were created. See, 9 C. J. p. 18; 18 C. J. p. 586; *Bachelor* v. *Korb,* 58 Neb. 122 (78 N. W. 485, 76 Am. St. Rep. 70); *Maryland Casualty Co.* v. *Pacific County,* 158 C. C. A. 171 (245 Fed. 831).

The amount on deposit in the bank to the credit of the county treasurer at the time it closed on October 2d was $19,986.40. The county treasurer's books showed an indebtedness of but $4,484.34. This discrepancy is accounted for by outstanding checks which had not been presented for payment. On September 21st, the treasurer had sent two checks to township treasurers for primary money, amounting to $9,257.10, and on September 28th he had sent a check to the auditor general for $6,308.88. These and a few small checks issued prior to September 21st were credited to the bank on the treasurer's books, but had not been presented for payment at the time the bank closed.

The defendant insists that as to all of these checks, except the last, which is hereafter considered, there was an inexcusable delay in their presentment for payment, which discharged the county, and that the indebtedness of the bank to the county was reduced thereby. As between the drawer and the person to whom a check is made payable, the failure of the latter to present it for payment within a reasonable time discharges the former from liability. 2 Comp. Laws 1929, § 9435. But, in my opinion, this question cannot be raised by the defendant. It had obligated itself in its bond to pay to the county on legal demand all moneys deposited by the county treasurer in the bank which had been named as a depository therefor. When the bank closed, it had on deposit $19,986.40, deposited therein by the county treas-

urer, and the fact that checks had been drawn thereon, but not presented or paid, in no way relieved it of such indebtedness. Our attention is not called to any authority in which this question is discussed or decided, but, in my opinion, no other construction can fairly be placed upon the obligation of the bank or that assumed by the defendant in its bond to the county.

The books of the county treasurer disclosed that at the time the bank closed there were credits thereon to the mortgage tax fund of $47; to the delinquent tax fund of $3,736.40; to the teachers' institute fund of $89.27; to the township fund of $2,702.31; to the city and village fund of $92.69; to the escheats fund of $564.68; to the redemption fund of $3,131.88, and to the May tax sale fund of $3,941.53, a total of $14,305.76, and it is insisted that this sum—

"is not a proper claim under the bond for the reason that they were not funds of the county of Osceola within the terms of the bond."

It is the duty of the county treasurer to receive such moneys and to pay them out to the parties entitled thereto. The bond recited that the bank "has been designated as a depository of funds of Osceola County, Michigan." The obligation of the defendant as a surety is thus stated:

"Now, therefore, the condition of the above obligation is such, that if the above bounden principal shall, in due course, pay on legal demand made during the terms of this bond, all moneys deposited pursuant to such designation, including any balance on deposit at the beginning of said term, together with interest at the rate agreed upon, then this obligation shall be void, otherwise of full force and effect."

The agreements and limitations therein in no way affect this obligation. These moneys, and that for which the check was sent to the auditor general, heretofore referred to, were deposited by the county treasurer pursuant to such designation, and the defendant is in no way relieved by the fact that they were, strictly speaking, not moneys belonging to the county. See, *Lawrence* v. *American Surety Co.*, 263 Mich. 586.

The judgment is affirmed.

CLARK, NORTH, FEAD, and BUTZEL, JJ., concurred with SHARPE, J.

WIEST, J. (*concurring in affirmance*). The attempted cancellation was coupled with a tendered substitution in part, and the one purpose was not effective without the other. The tendered bond in part substitution required acceptance by the board of supervisors, and the board was not in session. The intention was not one of unconditional cancellation, but, by reason of proffered continuation of suretyship in part, operative, if at all, as a single purpose.

I, therefore, concur in affirmance.