**MARYLAND CASUALTY CO. v. SPARKS, County Treasurer, et al.**

**UNITED STATES FIDELITY & GUARANTY CO. v. OAKLAND COUNTY et al.**

(two cases).

Nos. 6815, 6840, 6652.

Circuit Court of Appeals, Sixth Circuit.

April 12, 1935.

S. T. Mason, of Detroit, Mich., for appellant Maryland Casualty Co.

Albert McClatchy, of Detroit, Mich. (Payne & Payne, of Detroit, Mich., on the brief), for appellant United States Fidelity & Guaranty Co.

Irvin Long, of Detroit, Mich., and D. C. Porritt, of Pontiac, Mich. (Arthur P. Bogue and Robert D. Heitsch, both of Pontiac, Mich., and Goodenough, Voorhies, Long & Ryan, of Detroit, Mich., on the brief), for appellees.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appeals all involve the liability of the appellants as sureties on bonds given to the county of Oakland to secure deposits made by its treasurer in the now defunct Pontiac Commercial & Savings Bank of Pontiac, Mich. The cases are related, and involve substantially identical issues. They may be disposed of in a single opinion. Nos. 6815 and 6840 are appeals from summary judgments entered below in suits at law upon surety bonds. No. 6652 is an appeal from a decree dismissing a bill in equity praying that the bond involved in No. 6840 be declared invalid and canceled.

The bond of the United States Fidelity & Guaranty Company was executed on March 2, 1931, in the penal sum of $110,000; that of the Maryland Casualty Company on February 26, 1931, in the sum of $50,000. Each bond recites that the Pontiac Commercial & Savings Bank as principal has been designated as a depository for county funds, and is conditioned upon

the principal faithfully accounting for and paying over on legal demand all money deposited with it by or on behalf of the obligee. The security was required and furnished in pursuance of section 1195, Michigan Compiled Laws of 1929, which provides: "Before any deposit shall be made with any bank or banks as aforesaid, such bank or banks shall execute and deliver to the board of supervisors or the board of county auditors, as the case may be, a good and sufficient bond in an amount at least equal to the maximum amount to be deposited in such bank, and with such sureties as shall be approved by such board and the prosecuting attorney of the county. Said bonds shall be made to the county and shall be conditioned for the safe keeping and repayment of such moneys or any part thereof on demand and the payment of said interest, and shall contain such other conditions as may be required by the board of supervisors or the board of county auditors, not inconsistent with the provisions of this act."

Each of the bonds contained a pro tanto subrogation clause. While the language of the respective clauses is not identical, their purport is the same, to wit, that in the event of liability the surety will be subrogated to such proportion of the obligee's claim against the principal as the amount of the surety's liability shall bear to the obligee's deposit at the time of default, and the obligee agrees to execute all papers required to secure such rights to the surety.

The bank suspended payment on June 13, 1931, following which a temporary and later a permanent receiver was appointed. When the bank closed, the total deposits subject to withdrawal by the county treasurer were in excess of $2,000,000. The motion for summary judgment in No. 6840 recites that the deposit was $2,198,896.35, exclusive of accrued interest. One of the affidavits for summary judgment places the deposit at $2,160,000. The record in No. 6815 recites an order of the Oakland county circuit court finding the net deposit to be $2,205,448.03. For purpose of decision here, as will presently appear, the precise amount of the county's deposit is not material. At the time of the bank's suspension the county had depository bonds in the aggregate of $785,000, securing the deposits here involved, and at the time of the hearing below had received from the bank in dividends $185,568.85.

In each law case the plaintiffs filed a motion for summary judgment under the provisions of rule 30, of the Michigan Court Rules of 1931, in effect at the time, accompanied by affidavits reciting facts deemed to be sufficient to support the judgment. The defendant in each case replied with an affidavit of merits in pursuance of the rule asserting the existence of issues of fact, upon the determinations of which by a jury legal liability or its extent must depend. Notwithstanding, the court summarily entered judgment in each case for the penalty named in the bond, with interest at 5 per cent., the legal rate in Michigan in the absence of a contract rate, from the time of notice of default. It is from the summary judgments that the appeals in Nos. 6815 and 6840 are taken.

To understand the basis of the attack upon the summary judgments as such, it is first necessary to consider the legal defenses urged by the defendants in the two law cases in denial of or in limitation of liability, for it is upon our legal conclusions that recognition of determinative factual issues requiring jury decision must depend. The first contention noted is that the sureties are not liable in any amount because the county treasurer in violation of the statute made deposits in excess of the aggregate amount of security furnished by the bank. We dismiss this contention as without merit. The statute limiting the amount of deposits to be made by the county treasurer was not enacted for the purpose of affecting the liability of sureties on depository bonds. The obligation of the surety is limited by the penalty of the bond, and the obligee does not guarantee that the treasurer will follow the law in making deposits. Buhrer v. Baldwin, 137 Mich. 263, 100 N. W. 468; People v. Bankers' Surety Co., 158 Mich. 30, 122 N. W. 353; County of Oakland v. Central West Casualty Co., 266 Mich. 438, 254 N. W. 158; cf. Sioux County v. National Surety Co., 276 U. S. 238, 48 S. Ct. 239, 72 L. Ed. 547.

The second contention we note is that $1,360,800 of the funds on deposit in the bank to the credit of the county were not properly county funds, and not within the obligation of the bonds. This portion of the deposit resulted from the issue of certain Southfield Storm Sewer Drain District bonds and assessments, the money being covered into the treasury of the county under the provisions of law and deposited by

the treasurer in the bank. The Michigan Supreme Court has held the Southfield drain project void ab initio for want of jurisdiction, because under it a sewer instead of a drain was constructed. Clinton v. Spencer, 250 Mich. 135, 229 N. W. 609; Kinner v. Spencer, 257 Mich. 142, 241 N. W. 240; Brooks v. County of Oakland, 268 Mich. 637, 256 N. W. 576. The argument is that the drain project having been declared invalid, the money received from the sale of bonds and from assessments is not county money, and the sureties having undertaken to secure only county money, the drain money must be deducted from the deposit to ascertain liability. If this is the legal effect of the surety contracts, then the aggregate obligation of all sureties is substantially greater than the net deposit, and the pro rata clause of the surety bonds, held to be valid in Lawrence v. American Surety Co., of New York, 263 Mich. 586, 249 N. W. 3, 88 A. L. R. 535, becomes operative. This clause provides that the surety shall not be liable for a greater proportion of the amount on deposit at the time of default than the amount the bond bears to the aggregate penalties of all personal and corporate surety bonds held by the obligee at the time of default. Its application would then require a determination of the precise ratio between the secured deposit and the aggregate protection furnished, and judgments entered summarily in advance of such factual determination by a jury, where the amounts are in dispute, and for the full amount of the penalties in the bonds, are erroneous.

The Michigan Supreme Court has frequently held that bonds given to secure county funds also secure funds of which the county treasurer is the custodian, such as bank receivership deposits, Lawrence v. American Surety Co., supra, mortgage tax funds, and township, city, and village funds, County of Osceola v. Michigan Surety Co., 264 Mich. 8, 249 N. W. 445, 88 A. L. R. 636; County of Muskegon v. Michigan Surety Co., 264 Mich. 65, 249 N. W. 454, and funds coming into the possession of the county through irregular proceedings, Berrien County Treasurer v. Bunbury, 45 Mich. 79, 7 N. W. 704; County of Cheboygan v. Erratt, 110 Mich. 156, 67 N. W. 1117. The appellants undertake an analysis of these cases in an endeavor to show that while moneys in the possession of the county collected by de jure officials in the performance of their statutory duties, or by de facto officials in irregular proceedings may be county moneys, yet where proceedings are from the beginning a mere nullity, as in the case of the Southfield drain, the money collected is not the money of the county. Whatever semblance of plausibility this analysis may give to the contention seems to us to vanish when we consider the decisions of the Michigan Supreme Court in County of Oakland v. Central West Casualty Co., supra, and Sparks v. Detroit Fidelity & Surety Co., 268 Mich. 183, 255 N. W. 757. The bonds sued upon in these cases were given to protect the identical deposits in the failed Pontiac bank here involved, and contained identical or similar provisions. It is clear from the language of the court in the first of these cases that the same contention was there made, to wit, that under the terms of the bond the guaranty covers only funds of Oakland county, and that moneys held by the county temporarily as custodian only are not covered. Of this contention the court said: "It is without force." Whether these decisions establish a rule for our guidance here will be presently considered in our discussion of the pro tanto subrogation clause.

The purport of the last-mentioned clause has already been indicated. It is the contention of the appellants that it is valid and effective, and that until the plaintiffs surrender all rights to dividends from the bank receiver, and all collateral security, they cannot recover, even though the aggregate of such dividends, collateral, and security, will not serve to compensate the plaintiffs for their loss. The plaintiffs contend that the defendants have no right of subrogation until there has been full compensation for the loss. It is conceded by at least one of the defendants that the general rule is that full payment of the debt is a prerequisite to subrogation. It advances the contention, however, that this rule applies only to equitable subrogation and not to conventional subrogation growing out of express contract. It has, however, been the law in Michigan that there must be read into every statutory bond the provisions of the statute, and that stipulations and conditions at variance with it must be read out of the bond. County of Muskegon v. Michigan Surety Co., supra; Lawrence v. American Surety Co., of New York, supra. It is argued, therefore, that because the Supreme Court of Michigan in the Lawrence Case sustained the pro rata clause as not in conflict with the statute there applicable, the

pro tanto subrogation clause is not in conflict with the statute here involved. Counsel are able to cite only a few cases which pass upon the validity of pro tanto subrogation clauses, and we find no others. In Louisiana, Davis et al. v. West Louisiana Bank, 155 La. 245, 99 So. 207, and in Montana, American Surety Co. v. Clarke, 94 Mont. 1, 20 P.(2d) 831, such clauses were held to conflict with statutes and void, while in Texas, Hollis v. Southern Surety Co., of N. Y. (Tex. Com. App.) 63 S.W.(2d) 374, the clause was upheld. Appellants endeavor to distinguish the Louisiana and Montana cases from the instant case by distinguishing the terms of the several statutes involved. We need not consider such distinctions if they exist. What we have said is sufficient to demonstrate that there is no general trend of authority sustaining pro tanto subrogation in the face of statutes of similar purport. The Michigan Supreme Court, County of Oakland v. Central West Casualty Co., supra, and Sparks v. Detroit Fidelity & Surety Co., supra, holds the pro tanto clause invalid. We need only determine whether the now settled Michigan rule is to be followed.

It is urged that the Michigan cases are not controlling because decided after the instant suits were brought. We are not, however, concerned with a question of power, nor our independent preference. Even were we to recognize the question as one "balanced with doubt," it is clear that in the interest of "a benign and prudent comity," and of uniformity, we should follow the Michigan decisions. Mutual Life Insurance Co., of New York v. Johnson, Administrator, 293 U. S. 335, 340, 55 S. Ct. 154, 79 L. Ed. ——; Trainor Co. v. Aetna Casualty & Surety Co., 290 U. S. 47, 54, 54 S. Ct. 1, 78 L. Ed. 162; Fordson Coal Co. v. Kentucky River Coal Corp., 69 F.(2d) 131, 132 (C. C. A. 6). It would be difficult to conceive of anything more subversive of an aim at uniformity, nor more destructive of public confidence in the judicial process, than to place ourselves in conflict with the Michigan court in respect to recovery for the same losses when no federal authority compels and no general trend of state decision persuades.

We come then to the attack upon the summary judgments as such. A speedy method of obtaining judgment upon contracts or judgments where no valid defense is interposed has been employed in Michigan for almost 100 years. If there are issues of fact the motion for summary judgment is denied, and the issues are left for a jury to determine. If there are no questions of fact the judge applies the law in accordance with the admitted facts as disclosed by the affidavits. Peoples Wayne County Bank v. Wolverine Box Co., 250 Mich. 273, 276, 277, 230 N. W. 170, 69 A. L. R. 1024. It has never been doubted that local statutes and rules for the granting of summary judgments are binding upon the federal courts by virtue of the Conformity Act (28 USCA § 724). Massee & Felton Lumber Co. v. Benenson, 23 F.(2d) 107 (D. C. N. Y.); United States v. Fiedler, 37 F.(2d) 578 (D. C. N. Y.); Maslin v. Columbian National Life Ins. Co., 3 F. Supp. 368 (D. C. N. Y.); Elting, Collector, v. North German Lloyd, 287 U. S. 324, 53 S. Ct. 164, 77 L. Ed. 337; Hoff v. St. Paul-Mercury Indemnity Co., 74 F.(2d) 689 (C. C. A. 2). Summary judgment statutes do not deprive defendants of the right to trial by jury if the affidavits present no question of fact. Ex Parte Peterson, Receiver, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919. In view of our conclusion that the surety bonds here involved secure the total deposit of the county with the bank, and our determination to follow the Michigan rule as to validity of the pro tanto subrogation clause, there remain no determinative issues of fact to be submitted to the jury. The total deposit is clearly in excess of the aggregate security after deducting dividends, and decision does not require the ascertainment of the ratio thereto of drain district funds. Nor do we think that there is merit to the contention that the amount of the deposit can be determined only by evidence of each of the items of deposit and withdrawal. The auditor for the county deposes as to the amount of the deposit from an examination of the county treasurer's books, which are public records. The receiver for the bank concedes its correctness so far as it is material here, and the circuit court made a finding substantially in accord. There is, moreover, no direct allegation in the affidavit of merits that the deposit upon any theory is after deducting dividends less than the aggregate of the security. We think there was no error in the granting of motions for summary judgments.

Nor do we find error in the joining as parties plaintiff the receivers for the drain district funds. The circuit court appointed

them and fixed the percentage of the recovery to be allocated to the purpose of reimbursing the bondholders. Section 14010, Michigan Compiled Laws 1929, provides that every action shall be prosecuted in the name of the real parties in interest. In any event, we do not see how the defendants can complain. The distribution of the funds recovered is a question between the county and the bondholders. If the defendants have any concern as to the validity of the circuit court decree, or as to the manner in which the judgments may be satisfied, they can pay the money into court. Fidelity Phenix Fire Insurance Co. v. Haywood, 71 F.(2d) 834 (C. C. A. 6).

Two questions remain as to recovery of interest allowed by the District Court. The first relates to any recovery, and the second to the rate at which recovery should be permitted if at all. It is the defendants' contention that liability is limited to the penalties of the bonds. The general rule, however, seems to be that interest should be allowed upon the obligation of a surety as damages for unjustly withholding payment after being notified of the default of the principal. This rule has received the approval of the United States Supreme Court and other federal courts. United States v. United States Fidelity & Guaranty Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696; New Amsterdam Casualty Co. v. United States Shipping Board Emergency Fleet Corp., 16 F.(2d) 847 (C. C. A. 4). It is urged in reliance upon earlier Michigan cases that the Michigan rule is otherwise, and that recovery should be limited to the stated penalties. Fraser v. Little, 13 Mich. 195, 87 Am. Dec. 741; Spencer v. Perry, 18 Mich. 394; Grand Lodge of Independent Odd Fellows v. Morrison, 42 Mich. 521, 4 N. W. 739; White Sewing Machine Co. v. Dakin, 86 Mich. 581, 49 N. W. 583, 13 L. R. A. 313; People's Savings Bank v. Campau, 124 Mich. 106, 82 N. W. 803. However, in County of Oakland v. Central West Casualty Co., supra, the Supreme Court of Michigan interpreted its earlier decisions as not applying to commercial sureties, and allowed interest. This course was followed in Sparks v. Detroit Fidelity & Surety Co., supra. For reasons already indicated, we follow the Michigan decisions.

It appears that a substantial part of the funds deposited with the failed bank were deposited under contracts calling for the payment of interest by the bank at less than the legal rate. Part of the deposit was evidenced by certificates of deposit bearing 2 per cent. interest, and some of the funds bore 3 per cent. and 4 per cent. interest. The legal rate in Michigan, in the absence of a contract rate, is 5 per cent. This is the rate at which interest was computed below. In Lawrence v. American Surety Co., supra, the Michigan Supreme Court allowed interest upon a surety bond given to secure a bank deposit of public funds, but limited recovery to an agreed rate which was less than 5 per cent. It seems clear, however, that in Oakland County v. Central West Casualty Co., supra, and in Sparks v. Detroit Fidelity & Surety Co., supra, the legal rate was allowed in respect to the same deposits, and we follow these cases, although we would be the better satisfied in this course if it were clear that the question of rate had been specifically raised and ruled upon, and the Lawrence Case distinguished or overruled. Whether the Lawrence Case was ignored because the bond therein expressly recited the terms of the depository contract, or because the depository contract therein was confused with the security contract as governing the rate, we are unable to say.

There remains a disposition of the appeal in the equity case, No. 6652, wherein the bill was dismissed. It would appear that the bases for relief therein set forth being identical with the defenses asserted in the suits at law, the plaintiff had an adequate and complete remedy already asserted in the law case. Enelow v. New York Life Insurance Co., 293 U. S. 379, 55 S. Ct. 310, 79 L. Ed. ——; Adamos v. New York Life Insurance Co., 293 U. S. 386, 55 S. Ct. 315, 79 L. Ed. ——. In any event, the legal contentions relied upon have now been determined in the law case, and the equity case has become moot.

The judgments in Nos. 6815 and 6840, and the decree in No. 6652, are affirmed.